## WATERS v. CITY OF SOUTH BEND.

[No. 12,253.    Filed January 7, 1926.    Rehearing denied May 13, 1926.    Transfer denied October 8, 1926.]

1. ESTOPPEL.—*City, not estopped to assert rights of public in street where lot-owner knowingly erected a building on ground dedicated for a street.*—Where the owner of a city lot abutting on a street, without objection from the city, erected a building covering a part of the ground dedicated for a street, in good faith believing that the strip would never be used for street purposes, but with full knowledge of the rights of the public therein, the city would not be estopped to assert the rights of the public to the street.    p. 200.

2. DEDICATION.—*Grading full width of street constitutes acceptance of dedication and pavement of part not abandonment of remainder.*—Causing a strip of ground dedicated to the public for a street to be graded for its full width constitutes an acceptance of the street for the entire width thereof, and paving a strip but thirty-four feet wide would not constitute an abandonment of the remainder of the street.    p. 200.

3. MUNICIPAL CORPORATIONS.—*Acquiescence by city officials in use of part of street by abutting property owners held no surrender thereof.*—Acquiescence by city officials in the use of a part of a street by abutting property owners does not abrogate the public's rights thereto, since a municipal corporation has no power to sell or barter the public's rights to a street and, therefore, could not surrender them to a mere licensee.    p. 201.

4. MUNICIPAL CORPORATIONS.—*City not estopped to claim street for the public.*—Acquiescence by city officials in the erection of a building projecting over the property line and the collection of taxes on the improvement as located does not estop a municipality from asserting the public's rights to a strip of land dedicated for a street.    p. 202.

From St. Joseph Superior Court; *J. Fred Bingham,* Judge.

Action by George Waters against the city of South Bend.    From a judgment for defendant, the plaintiff appeals.    *Affirmed.*    By the court in banc.

*Arthur L. Gilliom,* for appellant.

*Lewis W. Hammond,* for appellee.

NICHOLS, C. J.—Action by appellant against appellee to quiet the title to a strip of ground seven and one-

half feet wide and sixty-seven and one-half feet long
once dedicated as a part of a public street in the city
of South Bend but which has been occupied in common
with a lot, to which it is contiguous, by a business build-
ing. The building and ground in question are owned by
appellant. When the building was constructed, it pro-
jected over the lot line and covered the strip in ques-
tion, and has remained in that position for many years.

One theory of the complaint is that the city never
accepted the strip in question as a part of the entire
strip dedicated for street purposes; and another theory
is that under the special facts and circumstances of
this case, the city is equitably estopped from asserting
its easement over the strip in question for street pur-
poses.

There was an answer in general denial. The evidence
was stipulated in its entirety.

The court found for appellee. Appellant filed a mo-
tion for a new trial, which was overruled, and the court
rendered final judgment in favor of appellee.

The error relied upon for reversal is that the court
erred in overruling appellant's motion for a new trial,
the grounds of which are that the decision of the court
is not sustained by sufficient evidence, that it is con-
trary to law, and newly-discovered evidence. The facts
as set out in appellant's brief and which are not con-
troverted by appellee show that in 1890 an unplatted
area was platted into town lots and that a sixty-foot
street is shown on said plat. In 1891, the said strip
was graded under contract let by the city, the cost of
which was assessed to the properties abutting on both
sides of said strip. In 1895, a sewer was constructed
along the center line of said street. In 1897, a brick
pavement thirty-four feet in width and curbs were laid
in said street, the sides of which pavement were, and
still are, equidistant from the lines of said dedicated

strip of sixty feet. At the time said pavement was constructed, the abutting property owners on both sides of said street along the entire length thereof, with the knowledge of and without objection by the officials of said city, contracted with the same party who built the pavement and curbs to construct sidewalks next to the curbs, and the sidewalks were so built and have always remained so, leaving a strip seven and one-half feet in width between the outer edges of the sidewalks and the street line as shown by the plat. Immediately after the sidewalks were thus built, the abutting property owners on both sides of the street graded said seven and one-half-foot strips to adjust them to their lots and improved them by sowing grass, planting trees and by building their private walks to said sidewalks, and they have continuously used and occupied said seven and one-half-foot strips in connection with their abutting lots. On the south side of said street, and just east of appellant's lot, one owner built the porch of his dwelling so as to project onto the said strip, and along the entire length on the south side, the dwellings are built to within a foot or two of said strip.

In 1897, at about the time said sidewalks and pavement were constructed, appellant's remote grantor excavated a basement for a business building on his lot which abutted on the south side of said street and at the west end thereof, where it intersects with two other streets. This basement was then excavated so as to include most of this seven and one-half-foot strip along the length of his lot (sixty-seven and one-half feet). He constructed a heavy permanent stone foundation in this basement, the north wall of which was five feet inside of this strip and only two and one-half feet from the sidewalk. A large and valuable two story brick and frame building was erected on this foundation, the lower part of which is of brick construction and which

has ever since its construction been used for business purposes, such as retailing groceries and meats. The second story, of frame construction, is adapted for dwelling purposes and has always been used as such. A large brick chimney was constructed in the north wall, said wall being two and one-half feet south of said sidewalk, and the cornice of said building on the north side extends two and one-half feet further north than the foundation so that the eaves extend over the entire seven and one-half-foot strip. This building was so constructed in 1897 without objection by the city or by anyone to it, and has ever since remained there and has been used as stated without objection by the city. The city has never used any part of said seven and one-half-foot strip since said pavement and walks were constructed, and the abutting property owners have used said strips ever since without objection by the city.

The street is a short street, only one city block in length, and does not connect directly with any other streets so as to form a continuous thoroughfare. It is located in a residential district and accommodates east and west travel from one street to another street.

The city has at no time made any claim to any part of said strip and has no immediate plans or intentions now of using said strip for street purposes. The appellant and all prior owners occupied said strip in controversy openly, and exercised full dominion over the same continuously without disturbance on the part of the city during all of said time. In February, 1922, appellant's immediate grantor petitioned the board of works of said city to vacate all of said seven and one-half-foot strip on the south side of said street; this petition was denied. Appellant, when he became the owner, brought this action to quiet the title to only that part of the said strip occupied by his building. The city now claims that the public easement in said strip

occupied by appellant's building exists unimpaired, although the city has taken no steps except in defending this action to assert said easement.

Appellant's building is in good condition, thirty-eight feet wide from north to south, and cannot be moved south on account of a street on that side of it. The building has a plate glass front, is of permanent construction and is now worth at least $10,000, and appellant would be occasioned a loss of several thousand dollars if he were compelled to vacate said strip.

Appellant is owner of the fee to his lot, including said seven and one-half-foot strip, and has paid taxes to the city, county and state on a valuation of said premises and said improvements where situated during all of said time.

Appellant contends that these facts show that said building was constructed in said location in good faith belief that said strip would never be used for street purposes, and we are inclined to agree with this contention. But, while this is true, we do not see how the fact that appellant's grantor acted in good faith can help him. The court, in the case of Sims v. City of Frankfort (1881), 79 Ind. 446, on 452, says that it is evident that the appellant in that case acted in good faith, but upon a mistake as to his rights, and then says that: "While this is true, it is equally true that the trustees of the public did not surrender, nor mean to surrender, any public rights. Indeed, they could not have surrendered such rights had they expressly undertaken to do so." That case, which has not been overruled in any of its holdings, is so much like the instant case in its facts that we do not see how appellant can escape from the rules of law there announced. Appellant's contention in this case is that the permissive acquiescence of the city's officers precludes the city now from asserting title to the strip in con-

troversy, under the principle of equitable estoppel. In the Sims case, the court says: "There are many reasons why the facts alleged in the complaint can not be held to work an estoppel. It appears that both parties had at least equal opportunities of knowledge. The facts were as fully known to the appellant and his grantor as to the municipality. There was not ignorance on one part and knowledge on the other; there was certainly knowledge on the part of the appellant. The recorded plat was to him constructive knowledge of the limits of the street. So, too, were the boundaries of his own lot. There could not, in such a case, be a reliance upon the acts of the municipal authorities. Where both parties meet upon equal terms, and possess the same opportunities of knowledge, and there is neither a false statement nor a fraudulent concealment, there can be no equitable estoppel." It appears that after the dedication of the street to a width of sixty feet, the same was first improved by grading to its full width. This was sufficient evidence of the city's acceptance of the street to its full width. But appellant argues that by the permanent improvement by paving the street to a width of but thirty-four feet, (with additional improvement by sidewalks five feet wide by the abutting property owners) the city thereby abandoned the balance of the street. But in the Sims case, at page 456, the court says that: "A municipal corporation, by failing to require the improvement of part of a street, does not abandon the right to the part not improved." To the same effect see *Hall* v. *Breyfogle* (1904), 162 Ind. 494, 70 N. E. 883.

The newly-discovered evidence which appellant presents as a ground for a new trial is to the effect that the contractor who constructed the pavement, curbs and sidewalks in question will testify that said sidewalks were located next to the curb so

3.

as to leave a vacant strip next to the abutting lots with the consent of the city officials, and that they were so located for the express purpose of permitting the abutting property owners to use and improve said strips of ground as their own; that the city officials knew all of said facts and raised no objections thereto and acquiesced therein. But again, appellant is confronted with the Sims case, where, on page 454, the court states the fundamental doctrine to be that a municipal corporation has no power to sell or barter away the public streets, and, of course, no right to surrender them to a mere licensee, and that what it cannot alien for a full consideration, it cannot bestow as a mere gratuity. In the light of this principle of law, appellant would not be helped by the newly-discovered evidence.

Appellant argues with much force that as the city officials stood by and permitted the improvements to be made without objection, that as the city has received taxes on the improvements in their present location, that it now has no need for the strip of land and it does not appear that it ever will have, and that it is merely asserting a technical claim, the equities are with appellant and that the principle of equitable estoppel should apply in his favor. But appellant's grantor had full knowledge of the conditions at the time he made his improvements on the controverted strip, and no doubt had he taken the proper legal steps at that time, he could have secured a vacation of the strip in controversy, at least he could have known his rights before making his improvements. Appellant knew, or should have known, that the city had declined to vacate the strip at the time he purchased, and his rights now cannot be greater than his grantor's.

The judgment is affirmed.