SWAIM ET AL. v. CITY OF INDIANAPOLIS.

[No. 25,848. Filed June 13, 1930. Rehearing denied November 6, 1930.]

234

236

*Sol H. Esarey* and *Christian & Waltz,* for appellants.
*Edward H. Knight, James E. Deery, Gentry, Cloe & Campbell* and *Merle N. A. Walker,* for appellee.

*C. W. Appleman, M. H. Mark* and *Roemler, Carter & Rust, Amici Curiae.*

MARTIN, J.—The appellants, who own the Indiana Pythian building and the lots on which it is located at the intersection of Massachusetts Avenue and Pennsylvania Street in the city of Indianapolis, brought this action to restrain the city from carrying out certain orders of its board of public works for widening the roadway (from 50 feet to 66 feet, i. e., eight feet on each side) and narrowing the sidewalk (from 18½ feet to 10½ feet) in Massachusetts Avenue in front of their building (no change being made in the total width of the street). The complaint alleged that narrowing the sidewalk would hinder and obstruct the substantial use of the avenue for pedestrians, and would injure and destroy the usefulness and value of appellants' building for office purposes. It alleged that the city plans to fill up and destroy a portion of the basement or vault of the building which extends under the sidewalk and street, and which contains boilers, dynamos, engines and wells, placed

there with the permission of the city when the building was erected 25 years ago. It was also alleged that the city had served a notice on the plaintiffs demanding that they remove such fixtures and machinery from the vault underneath the sidewalk and street, and vacate said space or (to retain such space under the sidewalk and street and) to submit to the city plans and specifications for the construction of adequate supports (steel construction) for that portion of the roadway which is to be widened, and for the sidewalk (the grade of which is to be changed), and that, in case appellants fail to comply therewith, the city threatens to take possession and fill up said basement or vault space.

After hearing the evidence, the court found for the defendant city and denied the temporary injunction, from which action this appeal was taken.

The complaint prayed for a "temporary restraining order," and, upon final hearing, for a "permanent injunction." The order of the court appealed from states that it was for the appellee and against the appellants on their application "for a temporary injunction." The terms "temporary restraining order" and "temporary injunction," while sometimes used synonymously, are properly distinguished. A temporary restraining order (is usually issued without notice and) is effective only until an application for injunction can be heard, while a temporary injunction (is usually issued upon notice and hearing, and) is effective until the trial of the action in which it is issued. 14 R. C. L. 306. No appeal can be taken from an order granting or refusing to grant a temporary restraining order, *Mason v. Milligan* (1916), 185 Ind. 319, 114 N. E. 3 (and appeals from orders granting or refusing to grant permanent injunctions are appealable to the Appellate Court, §1356 Burns 1926). The hearing conducted by the trial court was upon notice to appellee, both parties were in

court, introduced voluminous evidence, and argued the case. We conclude that the order made by the court was an order refusing to grant a temporary injunction, and that jurisdiction of the appeal is properly in this court.

Supporting appellants' allegation that narrowing the sidewalk would hinder and obstruct the substantial use of Massachusetts Avenue for pedestrians, and would injure and destroy the value of their building for office purposes, the custodian of the building testified, in substance, as follows: Ten stories of the building, 258 rooms, are occupied by 120 tenants, lessees of offices; the basement contains a restaurant and a barber shop; an auditorium with a seating capacity of 1,000 is on the 11th floor, and conventions of different orders and public meetings are held there. The four elevators of the building are located near the Massachusetts Avenue entrance, which is the entrance most frequently used, and there is a large amount of pedestrian (as well as vehicular) traffic on Massachusetts Avenue. He further testified that the sidewalks are crowded with people at the time of conventions, and that, in his opinion, a sidewalk 10½ feet in width is not wide enough.

The engineer of the city plan commission testified on behalf of the appellee that Massachusetts Avenue carries more traffic, at the peak or rush hours, than any other street in Indianapolis (explaining how the observations and comparisons were made); that but one line of vehicular traffic, in addition to the street cars, can now pass the safety zone therein, and that it is desired to widen the street so that two such lines of traffic can pass, thus greatly increasing the vehicular capacity of the street. He also testified that more pedestrians pass on the street than persons in vehicles, that it does not require over two feet of space for a man walking along a sidewalk, and that all the sidewalks in the down-town district are about

15 feet wide. From plats introduced in evidence, it appears that 16 feet in the center of the street is used for street-car space, that the distance from the street-car space to the sidewalk is 16 feet (a space narrower in width than the present sidewalk), and that the distance from the safety zone to the sidewalk is only 11½ feet. The accompanying photograph taken from the record shows the situation clearly.

View (taken from the record) showing Massachusetts Avenue in front of appellants' building.

The number of travelers on both streets and sidewalks in the downtown business districts of our cities has constantly increased during the past years, and transportation facilities, methods and practices rapidly change. The multitude of private automobiles now operating and parking upon the streets requires more roadway space than if the same number of travelers were carried in street cars and busses. Present conditions seem to require that more of the street surface be devoted to the roadway, while, under conditions arising in the future, wider sidewalks and narrower roadways may be desirable or necessary. In the future, even subways and elevated ways may be necessary. Thus, it is apparent that the problem of determining what use it shall be necessary to make of land dedicated for a street, including the problem of determining what proportion of the surface of the street shall be devoted to a roadway and what proportion to sidewalks, is necessarily one of fact, which must be determined from time to time by the proper authorities of the city. The courts have uniformly recognized that, under the city's power to control the public streets, it may, in the discretion of its officers, determine questions such as this, and that such discretion, unless there is the clearest abuse thereof, is not subject to control by the courts. 13 R. C. L. 82; 1 Elliott, Roads & Streets (4 ed.) §588, 581, 551; *Macy* v. *City of Indianapolis* (1861), 17 Ind. 267; *Yeakel* v. *City of Logansport* (1874), 48 Ind. 116; *Town of Marion* v. *Skillman* (1891), 127 Ind. 130, 26 N. E. 676, 11 L. R. A. 55.

The board of works of the city of Indianapolis in the instant case determined that it was desirable and necessary to widen the roadway and narrow the sidewalks in question. The appellants undertook to prove that the narrowing of the sidewalk in front of their building would hinder and obstruct the use of

the street, and would injure and destroy the value of the building for office purposes. The lower court, by its order, held that such proof had not been made out. Upon reviewing (but not weighing) the evidence above set out, we cannot say that the lower court was in error or abused its discretion.

The appellants make and argue the propositions that the right of ingress and egress to their property is an incorporeal constitutional right, and can be taken from them only under condemnation proceedings, under the power of eminent domain, upon a hearing under the due process clauses of the federal and state Constitutions. An abutting owner, regardless of whether he is the owner of the fee of the street or highway, has a special easement of access therein for purposes of ingress and egress, which easement is subordinate to the public convenience, of which the public authorities having control of the public streets are the judges. 13 R. C. L. 142, 143; 2 Elliott, Roads & Streets (4 ed.) 1155, 1156. We do not believe that any question concerning the easement of access is involved here, since the facts proved do not show that the change in the width of the sidewalk will materially affect ingress and egress to and from appellants' property.

There is no material conflict in the evidence adduced under the remaining allegations of the complaint, but a question of law, which is contested by the parties, arises from those facts. It appears that appellants' building is an 11-story triangular or "flatiron" shaped building, of steel structure, with exterior of Bedford stone, occupying the point bounded by Pennsylvania Street on the west and Massachusetts Avenue on the southeast side, extending along the latter street approximately 178 feet. At the time it was built, about 25 years ago, the city engineer laid out the foundation and approved the plans, and the city building inspector inspected and approved

the work as it was done. The plans included a basement or vault extending about 20 feet beyond the property line underneath the dedicated street. The excavation of the basement and all construction work on the retaining walls, basement and sidewalk were done and paid for by appellants. A concrete retaining wall was placed under the curb, and the sidewalk was constructed on, and supported by, a structure of steel and reinforced concrete of sufficient strength to bear the sidewalk and street load extending from the building, with a top of cement and prism glass, giving light to the basement. In the space under the sidewalk and street were located two deep wells that supply the building with water; engine rooms containing dynamos, boilers, etc., used in heating and lighting the building; coal bunkers; ash elevators; supply rooms; lavatories and rooms which are now rented (at a rental of $405 per month) and used for restaurant and barber shop purposes.

Appellants introduced in evidence the notice of public improvement, which they received from the board of public works, notifying them of the adoption of the improvement resolution for the widening of Massachusetts Avenue, etc. This notice advised them that said work provided for filling basements or other excavated places beneath the sidewalks and street, the construction of proper retaining walls, etc., and ordered them to vacate such spaces used or occupied by them. The notice further advised appellants that:

"If you prefer to retain such spaces beneath the sidewalks and street, and to adapt any obstructions to the new improvement, you must submit plans and specifications and proposed contract covering same, within ten days from the date of this notice, to the City Civil Engineer for the approval of him and this Board, and if so approved in writing, said plans may be used by you, in place of filling such spaces and

removing such obstructions, provided that all shall be done without delay and wholly at your own expense, and shall be subject to the control, supervision and acceptance, and also to future orders and control of the City Civil Engineer and this Board."

Appellants introduced testimony of a consulting engineer, who had examined the building, that, from an engineering standpoint, it would be unreasonably expensive and therefore not feasible for the building to supply its own heat, power and light if the portion of the basement described is filled up and new retaining walls are built, as there would be no practicable place to which the boilers and machinery could be moved. He also testified on cross-examination that the work could be done and leave the basement and machinery where it is, with the exception of the coal bunkers and ash elevators.

The assistant city engineer, who made the plans for the proposed street changes, testified for the appellee that the present sidewalk is at least six inches higher at the curb line than the roadway, and that, when the sidewalk is removed from the eight-foot space over which the roadway is to be widened, there will still remain the projecting steel beams and other supporting structures which are higher than the surface of the roadway, and which must also be removed; that the present plan of the city is to build a new retaining wall, which will carry the load, eight feet nearer the building than the present retaining wall, and fill up all that portion of the basement outside the new retaining wall, making a compacted fill on which to lay the new street pavement. He testified that the proposed new retaining wall could be modified to go around the generators and not interfere with any of the machinery in the basement, except the pump, coal bunkers and ash elevators, which would have to be moved. He further testified that, under an alternative and more expensive plan of construction, which could be used by

appellant, the entire basement or vault could be preserved. This plan would include the use of floor slabs or columns and an understructure of steel sufficient to carry the street traffic and support the six inch concrete foundation and three inch wearing surface of the new pavement over the widened street. It also appears from the evidence that appellants, after receiving the notice from the city, had structural plans prepared, and the cost estimated (at $12,500) of the steel work necessary to make the change and preserve their basement.

Where the fee of the street is in the municipality, the abutting owner can make use of the space thereunder for basements or vaults only upon express permission of the municipality. *Matter of Low* (1922), 233 N. Y. 334, 342, 135 N. E. 521; *Sherwin* v. *City of Aurora* (1913), 257 Ill. 458, 100 N. E. 938, 43 L. R. A. (N. S.) 1116. Where the fee of the street is in the abutting owner, some states hold that such owner may use such space without permission from the municipality, so long as he does not interfere with the dominant easement of the public, *Kress & Co.* v. *City of Miami* (1919), 78 Fla. 101, 82 So. 775, 7 A. L. R. 640; *Allen* v. *City of Boston* (1893), 159 Mass. 324, 34 N. E. 519, 38 Am. St. 423; while elsewhere, it is held that even then there must be express permission from the municipality for such use. *Matter of Low, supra; Appleton* v. *City of New York* (1916), 219 N. Y. 150, 114 N. E. 73, 7 A. L. R. 629.

Both parties here proceed upon the assumption that appellants are the owners in fee simple to the middle of the street of that portion of Massachusetts Avenue which abuts their lots, but the record contains no deeds, plats or other evidence concerning the title of appellants to the lots on which their building is located, or to the contiguous portion of Massachusetts Avenue. Ordinarily, ownership of the fee-simple title to a lot abutting on a street extends to the middle of the street, *Mont-*

*gomery* v. *Hines* (1893), 134 Ind. 221, 33 N. E. 1100, and, in the absence of evidence to the contrary (or of a statute providing that a dedication of a highway vests the fee thereof in the public), the title to the fee is generally presumed to be in the abutting landowner,[1] 29 C. J. 541 (though in some jurisdictions the fee is presumed to be in the public under such circumstances, 13 R. C. L. 121).

The question of the ownership of the fee in the street, however, is not a vital or controlling one here. It appears that appellants' basement was constructed and used with the permission of the city and that such permissive use has continued for many years. Under such conditions, the rights of an abutting owner who does not own the fee do not differ materially from the rights of an abutter who owns the fee, so far as the question here to be determined is concerned.

---

[1]The ownership of the fee in the street or highway depends primarily upon the ownership of such fee at the time the street or highway was established. See 13 R. C. L. 117, 118. Where land has been dedicated by its owner for a street or highway, a subsequent conveyance of the abutting land by such owner carries with it the fee to the center of the street or highway, as it will not be presumed that a grantor who parts with all his right and title to the adjoining land intends to withhold his interest in the road to the middle of it. 29 C. J. 542. The language used in *Terre Haute, etc., R. Co.* v. *Rodel* (1883), 89 Ind. 128, 46 Am. Rep. 164:

"The owner of a lot abutting on a street owns the fee to the middle thread of the street, . . . A conveyance of a lot adjoining a highway carries title to the center,"

is possibly too broad and subject to the qualifications that such abutting owner's grantor (immediate or remote) owned the fee in the land dedicated to the public for the street or highway at the time the dedication was made, and that the fee in such street or highway has not been expressly conveyed to another.

Under Acts 1821, ch. 18, providing for the laying out of the town of Indianapolis on a site of 2,560 acres selected for the permanent seat of our state government, the present central business section of the city of Indianapolis, which is shown by the record to include the land in question, was platted, streets were dedicated, and the lots were sold, by an agent for the State of Indiana. It thus appears that the dedication to the public use of the street here in question was made at a time when the fee-simple title thereof was vested in the State of Indiana. Under such circumstances, and under some of the cases noted below, it would seem that the conveyance by the agent for the State subsequent to the platting of the town and dedication of the streets, of a lot abutting on a street, should not convey the title in fee in such street (as would be the case where the conveyance was by private owner after

The permission of the city, where necessary for the construction and use of such a basement, need not be express, but may be implied, and the lapse of many years' time raises the presumption that the city acquiesces in such use. *Runyon* v. *City of Los Angeles* (1919), 40 Cal. App. 383, 389, 180 Pac. 837; *Deshong* v. *City of New York* (1903), 176 N. Y. 475, 68 N. E. 880; *Babbage* v. *Powers* (1891), 130 N. Y. 281, 29 N. E. 132, 14 L. R. A. 398, 401; *Tiernan* v. *Thorp* (1911), 88 Nebr. 662, 130 N. W. 280, 32 L. R. A. (N. S.) 1034; *City of Omaha* v. *Philadelphia, etc., Trust Co.* (1911), 88 Nebr. 519, 129 N. W. 996.

Having lawfully entered upon the use of the basement under the sidewalk and street, the appellants are entitled to continue their use so long as they do not thereby obstruct or endanger such use of the sidewalk and street as is now made thereof by the

he had dedicated a street). But this court, in *Terre Haute, etc., R. Co.* v. *Scott* (1881), 74 Ind. 29 (followed in *Western Union Tel. Co.* v. *Krueger* [1905], 36 Ind. App. 348, 74 N. E. 25), adopted an opinion by a commissioner in which it was stated that "in laying out the town of Indianapolis, making and filing maps as required by law, the State vested in the town for the use of the public such rights to, and interest in, the streets and alleys of the town as would have vested in it had any citizen been the proprietor and laid out the town in the same way," and held that the grantee (and his assignee) of such commissioner took the fee, subject to the public use, to the center line of the street.

Where the fee of a street was in the United States, and was granted by the town site act of 1867, to the trustee of a town site who surveyed and platted the same, the abutting owner of a lot does not own the fee in the street, *Loeber* v. *Butte General Electric Co.* (1895), 16 Mont. 1, 39 Pac. 912, 50 Am. St. 468, but, under said act, such fee is held "in trust for the . . . use . . . of the occupants thereof." *Pueblo* v. *Budd* (1894), 19 Colo. 579, 36 Pac. 599; *Ashby* v. *Hall* (1886), 116 U. S. 526, 7 Sup. Ct. 308, 30. L. Ed. 469. In *Paige* v. *Schenectady R. Co.* (1902), 38 Misc. Rep. 384, 77 N. Y. Supp. 889, it was said "where the sovereign or the public authorities are vested with the fee in a highway, the presumption that a grant of land abutting on or bounded by the highway conveys the fee to its center does not prevail," but this holding was reversed on appeal, Id. (1902), 77 App. Div. 571, 79 N. Y. Supp. 266; Id. (1904), 178 N. Y. 102, 70 N. E. 213, on authority of *Cheney* v. *Syracuse, etc., R. Co.* (1896), 8 App. Div. 620, 40 N. Y. Supp. 1103, affirmed 158 N. Y. 739, 52 N. E. 1123. See, also, *City of Dubuque* v. *Maloney* (1859), 9 Iowa 450, 74 Am. Dec. 358; *Kansas Natural Gas Co.* v. *Haskell* (1909), 172 Fed. 545.

public, or such use as is needed by the public. *Kress & Co.* v. *City of Miami, supra; Sears* v. *City of Chicago, supra; Gordon* v. *Peltzer* (1894), 56 Mo. App. 599.

Abutters who do not own the fee to the center of the street cannot by long continued enjoyment of the use of a basement or vault attain prescriptive rights therein, *Deshong* v. *City of New York, supra; Callahan* v. *City of Nevada* (1915), 170 Iowa 719, 153 N. W. 188, L. R. A. 1916B 927; and their license or permissive use may be revoked by the city at any time when the space is required for a proper public use. *Matter of Low, supra; Lincoln Safe Deposit Co.* v. *City of New York* (1913), 210 N. Y. 34, 103 N. E. 768, L. R. A. 1915F 1009; *Tacoma Safety Deposit Co.* v. *Chicago* (1910),

Under the civil law, the title to all roads and highways is in the sovereignty (*Dunham* v. *Williams* [1867], 37 N. Y. 251; *Renthorp* v. *Bourg* [1816], 2 Martin [La.] 46, [4 O. S. 97]; *Mitchell* v. *Bass* [1870], 33 Tex. 259) and it is frequently provided by statute (see *Edison Illuminating Co.* v. *Misch* [1918], 200 Mich. 114, 166 N. W. 944) that plat dedications of streets shall vest the fee-simple title therein in the city, as the Illinois statute of 1833 providing that "land . . . for streets . . . shall be held in the corporate name thereof [of the city] in trust to and for the uses and purposes set forth and expressed," etc. See *Sears* v. *City of Chicago* (1910), 247 Ill. 204, 93 N. E. 158, 139 Am. St. 319, 20 Ann. Cas. 539.

In *City of Chicago* v. *Rumsey* (1877), 87 Ill. 348, it was held, where land owned by the State of Illinois was laid off by its canal commissioners in the original town of Chicago, that the fee in the soil of the streets was either in the state or the city for the benefit of the public. There the plat did not conform to the requirements of the Illinois statute of 1833 (in which event, ordinarily, a common-law dedication would result, under which the adjoining property owner owns the fee, *Sears* v. *City of Chicago, supra; Illinois Trust and Savings Bank* v. *City of Chicago* [1910], 247 Ill. 264, 93 N. E. 167; *Farwell* v. *City of Chicago* [1910], 247 Ill. 235, 93 N. E. 168), and, upon such point being urged, the court said: "Had the land, where the town was laid out, belonged to a party other than the State . . . the point would have been well taken. But, . . . the land where these lots were laid off belonged to the State," and held that the state was not, and need not be, included in the statute. See, also, *Sheldon* v. *City of Chicago* (1910), 247 Ill. 267, 93 N. E. 166, where lots were conveyed by the canal commissioners before the passage of the act of 1833. In *United States* v. *Illinois Central R. Co.* (1894), 154 U. S. 225, 14 Sup. Ct. 1015, 38 L. Ed. 971, it was held that the fee simple title to the streets was vested in the city of Chicago in the 57-acre tract which constituted Fort Dearborn and which was platted and sold by the government under the direction of the Secretary of War as the "Ft. Dearborn addition to Chicago," the court resting its decision on the Illinois statute of 1833.

247 Ill. 192, 93 N. E. 153, 31 L. R. A. (N. S.) 868, 20 Ann. Cas. 564. Abutters who own the fee to the center of the street own it subject to the use of the street for all public purposes and subject to the power of the municipality to control and regulate the streets. The use of such property for street purposes is paramount, and dominates over the private use, and such abutters are bound to withdraw from occupation of the streets above or below the surface whenever the public needs the occupied space for travel. Notes, 32 L. R. A. (N. S.) 1034, 7 A. L. R. 646, and cases cited; *Sears* v. *Crocker* (1904), 184 Mass. 586, 69 N. E. 327, 100 Am. St. 577; *United States* v. *Boston Elevated R. Co.* (1910), 176 Fed. 963; *Sears* v. *City of Chicago, supra.*

Where an abutting owner of the fee, or where any frontager, with permission of the city, constructs, at substantial expense, a basement or vault under the sidewalk and street, the city may not thereafter at its own mere will, arbitrarily, capriciously or unjustly deprive such owner or frontager of the use of such basement (by the exercise of its dominant easement as against such fee owner or by revocation of the license of such other frontager). *Lincoln Safe Deposit Co.* v. *City of New York, supra; Tiernan* v. *Thorp, supra; Gregsten* v. *City of Chicago* (1893), 145 Ill. 451, 34 N. E. 426, 36 Am. St. 496. But the order of the board of works in the case at bar is not shown to be arbitrary, capricious or unjust. The determination to widen the roadway and narrow the sidewalk was made many years after the basement was constructed when changed traffic conditions made such widening desirable and necessary. Under such conditions, we cannot say that the act of the board is unjust or unreasonable, nor under such conditions can we say that the city is bound, in order to preserve appellants' basement in its present condition,

to adopt a plan of construction for the work more expensive than would otherwise be necessary.

The use which appellants are making of the sub-surface of the street (whether under a permissive license by the city, or under their own rights as the owners of the fee) is servient to the dominant easement of the public therein. Public necessity now requires that appellants surrender (or otherwise, at their own expense, adapt and conform) their use so as not to interfere with the use by the public which is now necessary for its welfare. From the facts proved and the principles of law stated, it is clear that the lower court properly denied the temporary injunction.

The appellants assert (in their points and in argument) that the proceeding for widening the roadway of Massachusetts Avenue, the narrowing of the sidewalks and the paving of the new portion of the roadway was erroneously brought by the city under §107, ch. 131, Acts 1921, §10440 Burns 1926, which amended the general statute of 1905 (cities and towns act) governing street improvements (it being their contention that the statute governing work of this kind in cities of the first class is the resurfacing and street-widening statute of 1923, ch. 25, Acts 1923, §10481 *et seq.* Burns 1926, as amended by ch. 74, Acts 1929, §10484 *et seq.* Burns Supp. 1929), and that such proceedings as brought are void, and that appellants cannot be affected thereby in their occupancy of a part of the public street.

It must be conceded by appellant that the city has the power to make this improvement under one statute or the other. The city, as a necessary preliminary, pursuant to either statute, has the undoubted right to demand of appellants that they vacate the space occupied by them which is needed for the improvement (or submit plans for a structure to support the new portion of the street). There is no allegation in the

complaint, nor is there any evidence set out in the brief, showing which statute the city proceeded under, and it is unnecessary to decide here the collateral question of whether the present improvement of Massachusetts Avenue is properly controlled by §10440 Burns 1926, or by §10484 *et seq.* Burns Supp. 1929, or whether such an improvement could be made under either statute.

It was alleged and proved that notice of the pending resolution for said street improvement was published twice, and that a notice to bidders was published twice in one newspaper in Indianapolis. Appellant contends that such legal advertising is governed by ch. 96, Acts 1927, §12077 *et seq.* Burns Supp. 1929, which provides that "in cities . . . of more than one hundred thousand population . . . it shall be legal to publish any such notice . . . in two newspapers of general circulation published in such . . . city," while appellee contends that such legal notice is governed by §§10440 and 10342 Burns 1926, which requires the notice to be published for two weeks, once each week, in a newspaper of general circulation published in such city. It is likewise unnecessary to decide this dispute here. It is admitted that appellants received a notice by mail, and that they attended the hearing of the board of works and there objected to the improvement. No other notice to them was necessary.

Judgment affirmed.

Myers, J., absent.

### On Appellee's Motion to Modify the Opinion and on Appellant's Petition for a Rehearing.

MARTIN, J.—Appellee says that a question which was presented and argued by both parties, but which we deemed unnecessary to decide, is of vital public importance and should be decided, viz., whether the assessments for the street improvement here being made should

be levied under §10440 Burns 1926 (§107, ch. 131, Acts 1921), or under §10484 *et seq.* Burns Supp. 1929 (ch. 23, Acts 1923, as amended by ch. 74, Acts 1929).

It is admitted that a determination of this question is not essential to a decision of this appeal, but appellee says that such question must be decided when it comes to assessing the cost of the completed work here involved, and that further litigation by the parties hereto will be avoided if this court now decides it. It is also shown to the court that about 50 cases involving similar questions are pending in the courts of Marion County, and attorneys interested in such cases have filed briefs herein as *amici curiae.*

The exact question is whether the cost of widening and resurfacing the roadway of a street which is already improved must be borne · in the proportion of three-fourths by the city and one-fourth by the property owner under the provisions of §§10484, 10485, or whether the city may elect to assess the property owner under §10440 for the entire cost of such improvement. Section 10440 *et seq.* Burns 1926 covers generally the subject of street improvements. The later act, §10484 *et seq.* Burns Supp. 1929, deals with particular subjects thereof as indicated by its title (see §3, ch. 74, Acts 1929, §10485.1 Burns Supp. 1929), viz.:

"An act concerning the resurfacing and widening of permanently improved roadways, including gutters, curbs and sidewalks in connection therewith, in cities of the first class, providing for the levying of a special tax for the payment of the same, providing for the creation of a special fund and the collection and disbursement of the same."

The act of 1923, as amended in 1929, does not provide a new system for street improvements; it adopts all the old law, §10440 *et seq.* Burns 1926, except for the changes therein indicated, in which respect it prevails over the

provisions of the old law.   25 R. C. L. 1010; *City of New Albany* v. *Lemon* (1925), 198 Ind. 127, 149 N. E. 350, 152 N. E. 723.   Section 10484 *et seq.* Burns 1926, regarding the resurfacing and widening of the roadway of improved streets in cities of the first class, determining the kind of pavement, and the apportionment of costs, applies to all improvements coming within its terms.

We have carefully considered the reasons advanced by appellants in their application for a rehearing (some of which are based on an erroneous construction of what the court did decide, and the others which present the same contentions already fully considered), and the application for rehearing is denied.

Counsel for appellee, in their brief and in oral argument, have stated that the city does not desire at this time to deprive appellants of their basement or vault, and that "the real gist of this case is 'who pays the price?'" We have determined that the property owners must bear the expense of conforming their servient use to the dominant use of the city, and we deem it equitable, in affirming the order of the trial court denying the temporary injunction, to suggest to the trial court that it definitely save for appellants the right, if they desire, to retain their basement and to perform at their own cost, under the control and supervision of the city, the construction work necessary to support the new roadway and sidewalk. It is, therefore, suggested that the trial court (unless a different showing of facts should develop upon final hearing) extend to the appellants the opportunity and right, within a reasonable time, to notify the appellee city that they desire to retain such space beneath the sidewalk and street and to submit plans and specifications and proposed contract covering the same to (the Board of Public Works and City Civil Engineer of) said city, such plans, when ap-

proved, to be carried out without delay and wholly at appellants' expense, subject to the control, supervision and acceptance of said city by its proper officers.