CITY OF INDIANAPOLIS ET AL. *v.* LINK REALTY COMPANY.

[No. 14,177. Filed January 29, 1932.]

*Edward H. Knight, James E. Deery* and *Herbert M. Spencer,* for appellants.

*Jackiel W. Joseph, Linn D. Hay* and *Samuel Kroot,* for appellee.

CURTIS, J.—This was an action by the appellee, a private corporation, for a mandatory injunction against the appellants, City of Indianapolis and Board of Public Works of the City of Indianapolis, comprised of Oren Hack, John C. McCloskey and Charles L. Riddle, seeking to prevent the appellants from interfering with the appellee in relaying across Koehne Street in said City, upon the surface thereof, a private railroad switch, which had been laid by the appellee in 1926, pursuant to

a so-called "switch contract" between the City and the appellee, alleged to have been ratified by an ordinance of said City, but which switch track the City had removed in October, 1927, after the appellee had failed to remove it upon written notice to do so, served by the city. In passing, it may be mentioned that §4 of the so-called "switch contract," so ratified by ordinance, provided for the appellee, "upon the written order of said Board made for any good cause affecting the interest of the City or the public welfare, to take up and remove said track and upon said parties' failure so to do, upon notification in writing, of ten days, to promptly pay the cost of having the same done . . . and in removing said track or causing the same to be done, said Board shall in no wise become a trespasser."

The appellee filed a verified complaint, the salient parts of which are as follows: That the appellee is the owner of certain real estate in the City of Indianapolis, upon one side of which is the right of way of the C. I. & W. and P. & E. Railway Company, and that said property is used for industrial purposes, and that a switch track is necessary for its continued use; that, on April 15, 1926, the appellee filed a petition with the Board of Public Works of the City of Indianapolis for the right, privilege and franchise of laying a switch track to its said property from said railway company across Koehne Street, and that thereafter an agreement in relation thereto was entered into between the appellee and the City of Indianapolis, by and through its Board of Public Works, which said agreement was approved by the common council of said City by a general ordinance passed on June 7, 1926, and approved by the mayor on the following day, and became effective immediately upon its passage, a copy of which ordinance is marked Exhibit A, and made a part of the complaint; that said contract provided that the switch track should conform to the

grade established and to be established by said City upon said street, and that the appellee would pave between the tracks in the event Koehne Street was paved; that, thereafter, on July 26, 1926, the appellee entered into a contract with the Peoria and Eastern Railway Company for the construction and maintenance of said switch track at an expense of $867, and that the appellee expended other money in connection therewith, making a total expenditure of $1,117; that, after the construction of said switch track, the appellee leased said real estate to a tenant to be used for a site for the purpose of manufacturing cement blocks, and that said switch track was used on an average of once a week for the transportation of cement and other materials, and that the appellee and said railway company complied in all things with the contract heretofore mentioned and did not obstruct the traffic on Koehne Street, and that said switch track was used in a careful and prudent manner, having regard for the use by the public of Koehne Street, and that said appellee was using said property in such a manner on June 16, 1927, at which time the Board of Public Works of said City notified the appellee to remove its switch track, and that thereafter, on June 20, 1927, said Board of Public Works passed a resolution as follows: "The Board orders the Link Realty Company, 709 W. Washington Street, to remove the switch track from Koehne Street within ten days. If not removed the City shall remove the same and the Link Realty Company shall be liable for the costs of removal"; that, by said resolution, the Board of Public Works attempted to rescind, annul and revoke the contract, right, privilege, and ordinance heretofore made by said City with the appellee, and that said Board of Public Works, without any right or reason, undertook to destroy appellee's investment and to declare the said switch track a nuisance without establishing any general

rule or regulation applying to all switch tracks similarly located; that, thereafter, on October 17, 1927, the City, without further notice to the appellee, illegally and without right removed the switch track from Koehne Street and that at said time the physical condition in, around and adjacent to said switch track was the same as it was when said ordinance was passed, and that no good cause affecting the interest of the City or public welfare had arisen or intervened that would justify the abrogation of said switch track agreement or the ordinance, and that said switch track was maliciously and illegally destroyed; that, thereafter, the appellee sought to have the appellants replace said switch track, but that the appellants refused and continue to refuse to do so; that the appellee stands ready and willing at all times to comply fully with said contract on its part to be performed, and that the appellee has no adequate remedy at law and will suffer irreparable injury and damage if the said City is permitted to continue the violation of said switch contract and ordinance; that said contract and ordinance are valid in all respects except that portion which delegated to the Board of Public Works the sole right and power to order the removal of said switch track; that said action of said City in removing said switch track and in refusing to replace it, and in refusing to allow the appellee to replace it, amounts to a condemnation of the appellee's property and franchise without due process of law, and is discriminatory. The contract alleged to have been entered into between the appellee and said City and alleged to have been ratified by said ordinance is made a part of the complaint by being made an exhibit thereto. This contract contains the provision with reference to notice to be given by the City in the removal of said switch track which has heretofore been set out in this opinion. The complaint also shows the passage of the ordinance referred to, being

General Ordinance No. 33, 1926, which ordinance, in §1 thereof, contains the following language: "Be it ordained by the Common Council of the City of Indianapolis, Indiana, that such contract above set forth be, and the same is hereby in all things confirmed and approved." The second section of the ordinance provides that it shall be in full force and effect from and after its passage.

To this complaint, the appellants filed a demurrer upon the ground that the complaint does not state facts sufficient to constitute a cause of action. There are seven specifications in the memorandum filed with the demurrer, which, in substance, are as follows: That the removal of the switch track was authorized by the express agreement of the parties under item 4, above set out; that the contract in issue made the appellee's rights subject to the discretionary control of the appellants, with which a court of equity will not interfere; that appellee did not possess a franchise or vested right to maintain its switch across the street, but only a permissive right or easement subject to termination at any time in the discretion of the Board of Public Works; that the facts pleaded do not show that appellee had resorted to an action of mandamus or other action at law which may be available, so a court of equity has no right to intervene; that the facts pleaded show that the track has already been removed pursuant to the power given the Board under the contract, and that the Board has refused permission to relay the track, so that its discretion thus exercised cannot be controlled by the court; and that the appellee does not possess any right to relay the track without the permission of the appellants. This demurrer was overruled, to which each appellant then excepted, after which the appellants filed an answer of general denial.

The case was tried before the court, and, on October

25, 1929, the court entered its finding, decree and judgment as follows: "And the court having heard the evidence and being advised in the premises, and has heretofore taken the case under advisement, the court now finds for the plaintiff and that the facts set forth in plaintiff's complaint are true, and that plaintiff is entitled to an injunction perpetually enjoining the defendant, City of Indianapolis, and the defendant, Board of Public Works of the City of Indianapolis as now comprised, its successors, agents, servants and employees, from directly or indirectly interfering with, or violating or breaching, General Ordinance No. 33, 1926, of the City of Indianapolis, which ordinance is set out in plaintiff's complaint herein, or from in any wise preventing the plaintiff from relaying the rails of a switch track provided therein to be laid across Koehne Street in the City of Indianapolis at the present grade of the street, or from in any wise interfering with the movement of cars upon such switch track as provided in and across Koehne Street in accordance with said ordinance, and that the plaintiff is entitled to relay the switch track heretofore constructed by it across Koehne Street at the present grade of the street, and for such purpose may cut such street, and that a permit shall issue therefor conditioned upon the plaintiff repairing such street in accordance with the laws, ordinances or rules of the defendants now governing the same as mentioned and set out in plaintiff's complaint:

"IT IS THEREFORE ORDERED by the court that said defendants, their successors, agents, servants and employees restore plaintiff the right to relay the switch track in and across Koehne Street in the City of Indianapolis at the present grade of said street in accordance with the terms of General Ordinance No. 33, 1926, of the City of Indianapolis, and that permission be granted the plaintiff by the defendants for the cutting of the

pavement in said street so to do in accordance with the laws, ordinances or rules pertaining to the same now in force.

"AND IT IS FURTHER ORDERED, ADJUDGED AND DECREED by the court that the defendants be perpetually enjoined from directly or indirectly interfering with, violating or breaching General Ordinance No. 33, 1926, of the City of Indianapolis herein referred to, or the right of the plaintiff provided therein or in any wise preventing the plaintiff from relaying the rails of the switch track heretofore constructed by it across Koehne Street, as provided in said ordinance, at the present grade of Koehne Street, or in any wise preventing the movement of cars on or across Koehne Street except as may be provided by General Ordinance or regulation of the City of Indianapolis.

"AND IT IS FURTHER ADJUDGED that the costs in this matter be assessed against the defendants, and that a notice of this decree be served upon the defendants."

Appellants filed separate and several motions for a new trial for the following causes, to wit: (1) The decision of the court is contrary to law; (2) the decision of the court is not sustained by sufficient evidence. These motions for a new trial were overruled and exceptions taken and an appeal prayed to this court. The errors relied upon for reversal are: (1) That the court erred in overruling the appellants' separate and several demurrers to the appellee's complaint; (2) the court erred in overruling the appellants' separate and several motions for a new trial.

In the trial of the cause, there was a stipulation as to a part of the evidence, and the appellee calls particular attention to a provision contained therein which relates to the making of the alleged "switch contract" and its ratification by the common council of the defendant

City, and containing the statement that it "became effective immediately upon its passage." This part of the stipulation is set out in full later in this opinion.

It was also stipulated that the switch track was completed in October, 1926; that, on June 16, 1927, the clerk of the Board of Public Works notified appellee by letter, received June 17, 1927, to remove said switch track across Koehne Street under the terms of Article 4 of the contract; that, on June 20, 1927, a written notice from the Board of Public Works was sent appellee by mail and received June 21, 1927, which, omitting the date and name and address of appellee, reads as follows: "You are hereby notified that the Board of Public Works of the City of Indianapolis has determined that it is to the best interest of the City that the switch maintained by your company across Koehne Street be removed. The ordinance authorizing this switch provides that your company, after notice, shall remove the switch within ten days. Further, the ordinance provides that in the event your company does not remove the same in the specified time, that the City shall remove the same and your company shall be liable for the cost of removal." The stipulation also showed that Koehne Street was paved with concrete from Washington to Market Street past the place where the switch had been in 1928, and had been paved the previous year from Market Street to New York Street, making a continuous paved street. There was little or no conflict in the evidence except perhaps as to the extent of the traffic past the place in the street where the switch track was located and the extent the concrete abutments of the subway under an overhead railroad at the place where the switch track was located, obstructed the view of travelers who might be proceeding through the subway northward on Koehne Street, and looking westward along the switch track along which cars might be approaching that street.

The undisputed evidence showed that, prior to the elevation of the railroad tracks which ran northwesterly and crossed Koehne Street to the south of appellee's property, Koehne Street was unimproved and had not been open to vehicular traffic under the tracks, but was used only by pedestrians, and that, after such elevation and the construction of a subway under the tracks, the condition of Koehne Street was bad until it was paved, and that, after such pavement, the vehicular traffic considerably increased.

The ruling upon the demurrer to the complaint presents substantially the same questions as are presented by the motion for a new trial and we, therefore, do not deem it necessary to discuss them separately, but proceed to the determination of the questions presented in the said motion for a new trial, to wit: Is the decision of the court contrary to law? Is the decision of the court sustained by sufficient evidence?

It is contended by the appellant that the appellee's complaint proceeds upon the theory that the City of Indianapolis possessed the legal power to grant a vested right or franchise to a private corporation to lay a private industrial switch track across a public street in said city; and that by a purported contract between the appellee and the Board of Public Works (but not approved and signed by the Mayor), ratified by ordinance of the common council, authorizing the appellee to construct such a switch track, the appellee thereby acquired a vested franchise right to build and maintain such switch in and across the public street, and that such switch could not thereafter be ordered removed by the Board of Public Works, but, if it could be removed at all, this could be accomplished solely by means of a general ordinance of the common council applicable alike to all switch tracks in the city similarly situated. The appellants also insist that no power exists in either the

Board of Public Works or the common council of said City, or both, to grant such a franchise or right as was attempted to be granted to the appellee. The appellants further insist that, since the mayor did not sign the alleged "switch contract" between the appellee and the appellants, that even if such power did exist to grant such a franchise or right as was attempted to be granted to the appellee, that in fact such "switch contract" was never duly executed by the City, and that, by reason thereof, the City is not bound and the appellee has no rights· under such franchise contract.

The appellee says that its "complaint does not proceed on the theory that the City of Indianapolis possessed the legal power to grant a vested right or franchise to a private corporation to lay a private industrial switch track across a street, but proceeds on the theory that once a private corporation has laid a switch track pursuant to an ordinance granting the privilege, that such switch track cannot be removed unless a changed condition from that existing at the time of the granting of the right (contemplating all the improvements that were then intended to be made in the street) has made the track an interference with the public welfare and interest of the City. That contrary to appellants' statement appellee's position is, that once having laid the switch track the Board of Works under the power reserved in the contract cannot arbitrarily single out this track for removal without ordering the removal of all other switch tracks similarly situated. That this reservation of power to remove expressly exonerated the City from any claim for damages, thereby implying that the track would not be ordered removed except for good cause by reason of changed condition. That contrary to the statement made by appellants that the demurrer raised the question that the switch track contract was *ultra vires*, a reading of the entire demurrer . . . will

show that appellants' position was that the Board of Works had full power, in its discretion, to order the track out at any time for any good cause affecting the interest of the City or the public welfare, and that such action was not reviewable by a court of law to determine whether it was arbitrary or capricious." It is further contended by the appellee that the stipulation as follows: "Thereafter an agreement was entered into by and between plaintiff [appellee] and the city of Indianapolis by and through its Board of Public Works, which agreement was enacted into an ordinance by the Common Council of the city of Indianapolis on June 7, 1926, known as General Ordinance No. 33, 1926, which ordinance was affirmed by the Mayor, John L. Duvall, June 8, 1926, and became effective immediately upon its passage," binds the City so that, at the trial of this case, there was no issue presented to the trial court as to the invalidity of the ordinance or its binding effect upon both the City and the appellee.

As we view the record before us, we conclude that, if the so-called "switch contract" which was ratified by General Ordinance No. 33, 1926, is not a valid contract by reason of the want of power to make the same on the part of the Board of Public Works of the City of Indianapolis, even though it be ratified by said ordinance of the common council of said City, then the appellee is not entitled to the relief demanded in its complaint, unless there is some theory of estoppel under the issues that will bind the City.

A municipal corporation in this state, which, of course, includes its executive, legislative and administrative departments, possesses only such powers as are expressly granted to it by the Legislature and those powers which are necessarily or fairly implied or incidental to the powers expressly granted and those powers that are essential to the declared ob-

jects and purposes of the municipality; and all persons dealing with a municipal corporation are charged with notice of such limited powers and with knowledge that no rights can be acquired by them based upon any act of the municipal authorities where there is a want of power to so act. *City of South Bend* v. *Chicago, etc., R. Co.* (1913), 179 Ind. 455, 101 N. E. 628, Ann. Cas. 1915 D966; *Scott* v. *City of LaPorte* (1903), 162 Ind. 34, 68 N. E. 278, 69 N. E. 675; *Bartles* v. *City of Garrett* (1929), 89 Ind. App. 349, 166 N. E. 437.

Section 10341 Burns 1926 provides that: "It shall be the duty of the board of public works to have general supervision over the streets, alleys, sewers, public grounds and other property of the city, unless otherwise provided in this act, and to keep the same in repair and good condition," etc. Section 11186 Burns 1926, provides that: "Every city and town, except when otherwise provided by law, shall have exclusive power over the streets . . . within such city or town." Section 10340 Burns 1926, cl. 13, confers upon the Board of Public Works the power "to direct the removal of any or all structures in the streets, alleys or public places of said city and remove the same, at the expense of the person maintaining the same on their [his] failure to make such removal." Section 10284 Burns 1926, cl. 49, among other things, confers upon the common council the power to enact ordinances "to prohibit the laying of any railroad track across or upon any street, alley or public place without permission first obtained therefor from the department of public works and to provide for the taking up and removing of any track so laid without notice, and charge the expense thereof against the offending person or corporation." Clause 11 of §10340, *supra,* confers power upon the Board of Public Works "to authorize telegraph, telephone, electric light, gas, water, steam, street car, railroad or inter-

urban companies to use any street, alley or public place in such city and erect necessary structures therein, to prescribe the terms and conditions of such use and to fix by contract the price to be charged to patrons: Provided, That such contract shall, in all cases, be submitted by such board to the common council of such city and be approved by ordinance before the same shall take effect." · Sections 11145-11152 Burns 1926, relating to the granting of franchises, are expressly limited to such grants to public utilities, and are clearly not applicable here. We believe that the statutes above referred to are all of the statutes that either directly or remotely touch upon the issues in the instant case.

The appellee in its complaint alleged that it "filed its petition before the Board of Public Works of the City of Indianapolis for the *right, privilege and franchise* of laying a switch track to its property" (our italics), and, at another place, it is alleged that the board, by resolution, attempted to rescind, annul and revoke the "contract, right, privilege and ordinances heretofore made by the City of Indianapolis with the plaintiff." At another place in the complaint it is alleged that the part of the contract, ratified by ordinance, which delegated to the Board the power to order the removal of the switch track, is invalid, and that the action of the Board in ordering the switch track removed and thereafter removing it "effects a condemnation of plaintiff's property and valuable franchise and property without due process of law." It is apparent from the facts stated in the complaint that the switch track contract and the subsequent ordinance ratifying the same proceeded upon the theory that such contract and ordinance were authorized under the provisions of clause 11 of §10340, *supra*. It also becomes apparent that the appellee claims a vested right or franchise by virtue of the said contract and ordinance.

An examination of the statute in question discloses that it only authorizes and empowers the Board of Public Works "to authorize telegraph, telephone, electric light, gas, water, steam, street car, railroad or interurban companies" to use the streets, etc., and then not until they enter into a contract with the City through its Board of Public Works, which must be ratified by an ordinance. This section of the statute clearly does not permit the making of such a contract with a private person or corporation as in the instant case.

But the appellee contends that, "once a private corporation has laid a switch track pursuant to an ordinance granting the privilege, that it cannot be removed unless a changed condition from that existing at the time of the granting of the right (contemplating all the improvements that were intended to be made in the street) has made the track an interference with the public welfare and interest of the City. That, contrary to appellants' statement, appellee's position is that, once having laid the switch track, the board of public works, under the power reserved in the contract cannot arbitrarily single out this track for removal without ordering the removal of all other switch tracks similarly situated." We cannot adopt appellee's theory of the law.

It is well here to say that, under the statutes heretofore quoted in this opinion, a City has "exclusive power" over its streets except when otherwise provided by law; that the Board of Public Works has the power to "direct the removal of any or all structures in the streets," and that such power is not derived from any contract the City may make.

In Lewis, Eminent Domain (3d ed.) §173, we find the general rule, supported by the great weight of authority, stated as follows: "It is a general rule that use of streets cannot be granted for private purposes. It follows

necessarily that a purely private railway cannot be constructed upon, across or along a public street or highway. There is practically no question about this proposition, the difficulty lying in its application. The great weight of authority is that a siding, switch or spur track connecting a railroad with private property, such as a factory, elevator, quarry or other place of business, and for the accommodation of the owner of the property, is a private use and that such tracks cannot be laid upon and across the streets and highways. . . . In Illinois such spur or switch tracks are regarded as a part of the railway and a public use, though serving but a single establishment and constructed at the expense of its owner. When such a track is open to all who wish to use it and either does serve various parties or is capable of doing so, it is a public use and may be laid in the street." Many authorities are cited in the text to sustain the general proposition laid down. See, also, McQuillin, Municipal Corporations (2d ed.) §1467; Dillon, Municipal Corporations (5th ed.) §1176; 44 C. J. (Municipal Corporations) §§3782-3784; *Mester* v. *Morman* (1924), 227 Mich. 364, 198 N. W. 927; *State* v. *City of Trenton* (1872), 36 N. J. Law 79; *Union Towel Supply Company* v. *Jersey City* (1924), 99 N. J. Law 52, 123 Atl. 254; *Butler* v. *F. R. Penn Tobacco Co.* (1910), 152 N. C. 416, 68 S. E. 12, 136 Am. St. 831. The Constitution of the State of Illinois contains the provision that: "Railways heretofore constructed, or that may hereafter be constructed in this State, are hereby declared public highways, and shall be free to all persons for the transportation of their persons and property thereon, under such regulations as may be prescribed by law." In the case of *People, ex rel.,* v. *Blocki* (1903), 203 Ill. 363, 67 N. E. 809, a case that is relied upon by the appellee,

the court said: "The track defendant was authorized by ordinance to construct, when completed and attached to the principal track, is as much a 'public highway,' in the sense that term is used in the constitution, as is the road of the company to which it is attached, and no doubt is entertained the company is subject to the same duty to use it for the 'convenience and benefit' of the public as any part of its main track." In view of the peculiar constitutional provision of the State of Illinois, its courts are no doubt correct in holding that a private industrial switch track across a public street and connected with a railway system does not remain merely a private track, but becomes a part of the main track with which it is connected, and becomes a public highway and thereby open to public use and subject to public control. We have no such constitutional or legislative provision, and hence the Illinois cases are readily distinguishable. In our opinion, the prime reason for the general rule announced by Lewis and the other textbook writers and by the courts, is in that lack of use and control that the public would have of a track laid on a public street by a private person or private corporation as contradistinguished from the use and control of the same the public would have if granted to a quasi public corporation. This was well illustrated by the evidence in the instant case that coal cars at times were switched across Koehne Street in charge of no one except the owner of a coal yard with no train man on the car and no switch engine around. The general grant of powers to a city of exclusive general supervision over the streets of the City, contained in the sections of the statutes heretofore quoted, while conferring very broad powers, has always been held to mean that such control is a governmental function in so far as it relates to public or quasi public use of the streets, and does not authorize the granting of a

private use of the streets for other than a mere temporary purpose. *Vandalia R. Co.* v. *State, ex rel.* (1906), 166 Ind. 219, 76 N. E. 980, 117 Am. St. 370; *Adams* v. *Ohio Falls Car Co.* (1892), 131 Ind. 375, 31 N. E. 57; *City of Richmond* v. *Smith* (1897), 148 Ind. 294, 47 N. E. 630; *City of Tell City* v. *Bielefeld* (1898), 20 Ind. App. 1, 49 N. E. 1090; *City of Peru* v. *Gleason* (1883), 91 Ind. 566; *Sims* v. *City of Frankfort* (1881), 79 Ind. 446; *State* v. *Berdetta* (1880), 73 Ind. 185, 38 Am. Rep. 117; *City of Valparaiso* v. *Bozarth* (1899), 153 Ind. 536, 55 N. E. 439, 47 L. R. A. 487; *Cloverdale* v. *Edwards,* (1900), 155 Ind. 374, 58 N. E. 495; *Town of Newcastle* v. *Lake Erie, etc., R. Co.* (1900), 155 Ind. 18, 57 N. E. 516; *Grand Trunk, etc., R. Co.* v. *City of South Bend* (1909), 174 Ind. 203, 89 N. E. 885, 91 N. E. 809, 36 L. R. A. (U. S.) 850; *Ewbank, Trustee,* v. *Yellow Cab Co.* (1925), 84 Ind. App. 144, 149 N. E. 647; *Waters* v. *City of South Bend* (1926), 85 Ind. App. 196, 150 N. E. 67.

The record before us establishes beyond peradventure that the use and franchise sought to be enforced by appellee is not of any temporary nature, but, on the contrary, the trial court perpetually enjoined the appellants from directly or indirectly interfering with the appellee in exercising its alleged rights under the said contract. These alleged rights were not of a temporary character. The City was without power to grant the appellee the rights which it claims under the contract.

But the appellee claims that, because of the stipulation heretofore mentioned the contract was entered into and approved by ordinance "approved by the Mayor John L. Duvall, June 8, 1926, and became effective immediately upon its passage," there was no issue presented to the trial court as to the validity of the ordinance or its binding effect upon both the

City and appellee. As we view the stipulation, it meant nothing more than an agreement as to the facts therein contained, and that it was not a stipulation as to the law that might arise out of those facts. The legal effect and interpretation to be given the facts contained in the stipulation were not a proper matter for agreement of the parties. To hold that the City of Indianapolis lacks the power to make the contract in question, but that the parties, by stipulation, could confer that power would indeed be a strange doctrine. If the stipulation could be construed as an attempt to supply the want of power of the City to make the contract in question, the attempt would be utterly unavailing. See 21 C. J. (Estoppel) §151; *Sturm* v. *Baker* (1893), 150 U. S. 312, 14 Sup. Ct. 99, 37 L. Ed. 1093. We are not impressed with the argument of the appellee that there is any ground of estoppel against the City in the instant case. Where there is a want of power of the City, as in this case, to make the contract in question, there can be no estoppel. *Civil City of Indianapolis* v. *Ostrom Realty, etc., Co.* (1931), 176 N. E. (Ind. App.) 246; *Waters* v. *City of South Bend, supra; Grand Trunk, etc., R. Co.* v. *City of South Bend, supra; Town of Newcastle* v. *Lake Erie, etc., R. Co., supra.*

The appellee relies upon the case of *Swaim* v. *City of Indianapolis* (1930), 202 Ind. 233, 171 N. E. 871. The principles of law governing that case are entirely different from those governing the instant case. There the facts dealt with a license or permissive use of a basement projecting under a city street and sidewalk for a long period of years. The City desired to make certain changes in the sidewalk and street, and ordered the property owner either to vacate under the sidewalk and street or to make such changes by way of supports and the like as would enable the City to make the desired improvement. In that case, there was no use whatever

of the surface of the street, made by the property owner. The rules of law to be applied in that case are so manifestly different from the rules of law applicable in the instant case as not to require further mention, but, as throwing light upon this question, we cite: *Gerstley* v. *Globe Wernicke Co.* (1930), 340 Ill. 270, 172 N. E. 830; *People* v. *Marshall Field & Co.* (1915), 266 Ill. 609, 107 N. E. 864, L. R. A. 1915F 937, Ann. Cas. 1916B 743.

Having arrived at the conclusions indicated in the foregoing opinion, it becomes unnecessary to discuss the question as to whether or not the "switch contract" in question is invalid by reason of the fact that it was not signed by the mayor.

The appellee also claims that the removal of its switch track could be accomplished only by a general ordinance applicable to all switches in the City similarly situated. This contention is without merit. See *Crowder* v. *Town of Sullivan* (1891), 128 Ind. 486, 28 N. E. 94, 13 L. R. A. 647; *State, ex rel.,* v. *Stickelman* (1914), 182 Ind. 102, 105 N. E. 777.

A steam railroad, interurban or street railway line has public functions to perform in serving the general public with transportation facilities, and is subject to the general law of the state in reference thereto. Accordingly, the Legislature, as we have pointed out, has conferred upon a city the power to grant them franchises which confer upon them certain vested rights where their tracks are laid upon or across public streets. The appellee does not belong to that class, but is solely a private corporation under the law, with power to own and hold real estate for its own profit and benefit. Its intended use is for the private purpose of enhancing its own private profits in the use of its land, and, in no respect, did the appellee exercise any function of a quasi public corporation in the use of said switch track. Under the circumstances, the

use it might enjoy in the street could legally be only a mere permissive use at most. It certainly is not entitled to assert a vested right in the street. After the notice was served by the City, the duty to remove its tracks was mandatory. When it failed to remove the same, the City had ample power under the law (not the contract) to remove the same, and having done so, the appellee is without right to the relief asked for in its complaint. Before the said removal notice was served, the Board of Public Works entered an order requiring the appellee to remove the tracks in question and gave appellee 10 days in which to remove same. This was on June 20, 1927. Of this order the appellee had notice. On October 17, 1927, the Board ordered the street commissioners to remove the tracks, which was done.

We conclude that the decision of the trial court is contrary to law, and that it is not sustained by sufficient evidence. The court, therefore, erred in not sustaining the motion of appellants for a new trial. For this error, the judgment is reversed, with instructions to grant a new trial and for further proceedings not inconsistent with this opinion.

Judgment reversed.