In the Matter of the Application of SETH LOW et al., Constituting the BOARD OF RAPID TRANSIT RAILROAD COMMISSIONERS OF THE CITY OF NEW YORK, Relative to Acquiring a Right of Way under Joralemon and Fulton Streets and Flatbush Avenue.

THE CITY OF NEW YORK, Appellant; CARSTEN H. OFFER-MAN et al., Respondents.

**New York (city of) — abutting owners cannot construct vaults under street in front of their premises without permission from city authorities — such permission revokable when vault space required for city improvements — owners of vaults taken in construction of subway through street are not entitled to compensation therefor.**

1. The owner of property situated upon a street in the city of New York has no right as an abutting owner to construct vaults under the street without the permission or authority of the city and any permits granted for this purpose are revokable whenever the street is required for a public improvement. The very nature of the privilege is such that the abutting owner constructs his vault with knowledge that the city authorities cannot give him an easement or a franchise in the street which he may maintain against the rights and interests of the public. At most it is a mere license to use a portion of the highway temporarily or until the space is required for the public. The city authorities would have no right to grant more than this even if they should attempt to do so.

2. Owners of property abutting upon a street through which a subway has been constructed, whose vaults, built under the street with the permission of the city authorities, have been taken for the

subway in proceedings instituted under the Rapid Transit Act, are not entitled to damages for the taking of the vaults on the ground, either that the permits for the vaults have not been revoked by the city, so that the vaults are property or easements of the abutting owners as against the board of rapid transit commissioners of the city acting as a subway builder, or because the Rapid Transit Act, itself, in defining " property " as including privileges, franchises and easements belonging to abutting owners, has directly and specifically authorized payment of compensation for the taking of these vault privileges.   The abutting owners had no right to construct vaults under the street without the permission or authority of the city. The permits granted for this purpose were revokable when the street was required for a public improvement and did  not constitute a right, privilege, franchise or easement, as those words are used in the Rapid Transit Act, for which compensation was to be made when such were taken or destroyed.   The city could revoke these permits and remove the vaults whenever a public improvement was undertaken which necessitated such an act, and having this right, the taxpayers should not be called upon to pay for its exercise.   The word " privilege " as used in the Rapid Transit Act has no reference to such revokable permits.   (*Lincoln Safe Deposit Co.* v. *City of New York*, 210 N. Y. 34, followed.)

*Matter of Low* v. *Delaney*, 199 App. Div. 738, reversed.

(Argued April 18, 1922; decided May 2, 1922.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the second judicial department, entered January 27, 1922, which unanimously affirmed an order of Special Term confirming the report of commissioners of appraisal appointed in a proceeding to acquire a right of way for a subway.

*John P. O'Brien*, Corporation Counsel (*Charles J. Nehrbas* and *Edward J. Kenney, Jr.*, of counsel), for appellant.   The city is not required to make any compensation for the interference by the subway with, the vault formerly in the bed of the street in front of the respondents' building. (*Lincoln S. D. Co.* v. *City of New York*, 210 N. Y. 34; *Appleton* v. *City of New York*, 219 N. Y. 150; *Parish* v. *Baird*, 160 N. Y. 302; *City of*

*Mount Vernon* v. *N. Y., N. H. & H. R. R. Co.*, 232 N. Y. 317.)

*George O. Redington, Carleton S. Cooke* and *William G. Fullen* for Transit Commission of the State of New York, *amicus curiæ.* The legislature cannot authorize uses of public streets by private persons, which interfere with their use for public purposes; and such limitation is not confined to " street uses." (*People ex rel. Pumpyansky* v. *Keating,* 62 App. Div. 348; *Williams* v. *Silverman R. & C. Co.*, 111 App. Div. 679; *Ackerman* v. *True,* 175 N. Y. 353; *McMillan* v. *Klaw & Erlanger Construction Co.*, 107 App. Div. 407; *Lincoln S. D. Co.* v. *City of New York,* 210 N. Y. 34; *Deshong* v. *City of New York,* 176 N. Y. 475.) The holder of a vault permit acquires no property right as against the municipality issuing such permit. (*Potter* v. *Interborough R. T. Co.*, 54 Misc. Rep. 424; *Lincoln S. D. Co.* v. *City of New York,* 210 N. Y. 34.) The rights of an abutter may be common-law easements for which compensation must be concededly paid if condemned, or they may be mere revocable privileges upon the sufferance of the municipality. If the latter be taken for a public use, there seems to be no reason in law or equity why the abutter should be paid for them. (*Eels* v. *American T. & T. Co.*, 143 N. Y. 133; *Crooke* v. *Flatbush Water Works,* 29 Hun, 245; *Adams* v. *Saratoga & W. R. R. Co.*, 11 Barb. 414; *Matter of City of Yonkers,* 117 N. Y. 564; *Sears* v. *Crocker,* 184 Mass. 586; *Matter of R. T. R. R. Comrs.*, 197 N. Y. 81; *Winters* v. *City Council,* 83 Ala. 589; *Sauer* v. *New York,* 206 U. S. 536.)

*William H. Hamilton* and *Norman C. Conklin* for respondents. The legislature intended and imposed as a condition for its authorizing this subway, that the city (as a railroad corporation) should take the streets as they existed, and pay for all damage to abutting owners. (*Matter of Rapid Transit R. R. Comrs.*, 197

N. Y. 100; *Lehigh Valley R. R. Co.* v. *Canal Board*, 204 N. Y. 471; *Oswego & Syracuse R. R. Co.* v. *State*, 226 N. Y. 351; *Matter of Comrs. of Public Works*, 135 App. Div. 579; 199 N. Y. 531; *People ex rel. Lasher* v. *City of New York*, 134 App. Div. 75; *People* v. *Law*, 34 Barb. 494; *People* v. *O'Brien*, 111 N. Y. 1; *Story* v. *N. Y. El. R. R.*, 90 N. Y. 195; *Rothschild* v. *Interborough Rapid Transit Co.*, 162 App. Div. 534.) The city had two distinct legal entities or characters, one as a public or municipal corporation, the other as a private railroad corporation. It acted solely in the latter capacity in regard to the subway, and none of its rights, privileges or immunities as a municipality applied to it as a private railroad corporation. (*Matter of Rapid Transit Railroad Comrs.*, 197 N. Y. 81; *Matter of City of New York* [*New Street*], 215 N. Y. 109; *Sinsheimer* v. *Underpinning & Foundation Co.*, 178 App. Div. 495; *Ogden* v. *City of New York*, 141 App. Div. 578; *Bailey* v. *Mayor of New York*, 3 Hill, 530; *McNulty* v. *Offerman*, 152 N. Y. 181; *Kane* v. *N. Y. El. R. R.*, 125 N. Y. 165; *Hughes* v. *M. E. R. Co.*, 130 N. Y. 14.) Such privileges never were revoked by the municipal authority, and the statute abrogated any alleged right of revocation by requiring payment of all " rights, easements and privileges " of abutting owners, whether previously revocable or not. (*Oswego & Syracuse R. R. Co.* v. *State*, 226 N. Y. 351; *Lehigh Valley R. R. Co.* v. *Canal Board*, 204 N. Y. 471; *Matter of Comrs. of Public Works*, 135 App. Div. 579; 199 N. Y. 531; *Matter of City of New York* [*Pier 15*], 95 App. Div. 501; 185 N. Y. 607; *Gergsten* v. *Chicago*, 145 Ill. 451; *Chicago* v. *Norton Milling Co.*, 196 Ill. 580; *Chicago M. Gas Light Co.* v. *Town of Lake*, 130 Ill. 43; *Moodalay* v. *East India Co.*, 3 Hill, 540; *People* v. *O'Brien*, 111 N. Y. 1; *City of Buffalo* v. *Chadsayne*, 27 N. Y. S. R. 60; *Trustees of Dartmouth College* v. *Woodward*, 4 Wheat. 518; *Fletcher* v. *Peck*, 6 Cranch. 87.)

22

CRANE, J. Carsten Henry Offerman, John Offerman, Theodore Offerman, Lena Maria Rasch and Anna Catherine Schmidt were the owners in fee of premises known as 503–513 Fulton street in the borough of Brooklyn, city of New York. Under the surface of Fulton street there has been constructed a subway railroad. Commissioners, appointed to assess damage to property owners occasioned by the building of this subway, awarded to these abutting owners $21,000 for the value of all vaults and vault rights taken in the proceeding. The order confirming this award has been unanimously affirmed by the Appellate Division which, however, granted leave to appeal to this court as in its opinion questions of law are involved which ought to be reviewed by us.

The question of law is whether or not these abutting owners on Fulton street had any property rights in these vaults under the highway which entitled them to compensation.

This proceeding was instituted to acquire a perpetual underground easement for rapid transit purposes in Joralemon street, Fulton street and Flatbush avenue, and was taken pursuant to the Rapid Transit Act (L. 1891, ch. 4, as amended) as it was in 1905. The board of rapid transit commissioners, appointed by the act, was authorized to acquire by condemnation any property rights, privileges, franchises and easements, whether of owners or abutters, which in the opinion of the board was necessary for the purpose of constructing and operating such subway road. The word " property " as used in the act was said to include real estate and any rights, terms and interests therein, or rights, privileges, franchises or easements of abutting owners. (Section 39.)

The excavation in front of respondents' property was begun in July of 1905 and finished in July of 1907. As constructed, the subway occupies almost all of the space in the bed of the street in front of this property which was formerly occupied by a vault used by respondents

in connection with their steam heating plant. This vault extended under the sidewalk on the Fulton street front nineteen (19) feet and ran along parallel to the building ninety-nine (99) feet. In it were installed four large boilers and coal bins, providing heat, light and power for the seven-story building erected on the lots.

The commissioners found, and the finding has been unanimously affirmed by the Appellate Division, that the permits under which these vaults were constructed contained the following clause: " This permit is issued subject to revocation thereof at any time hereafter by the Deputy Commissioner of Highways, when in his judgment the space occupied by said vault or any portion thereof may be required for any public improvement, or upon any violation of any of the terms or conditions hereof."

It is the claim of the owners which has been sustained by the courts below that these vault permits gave to the abutting owners an interest or privilege in Fulton street which could not be taken or extinguished without compensation. The basis for this claim, as I understand it, is: *First.* That the permits have not been revoked by the city so that the vaults are property or easements of the abutting owners as against the board of rapid transit commissioners or the city acting as a subway builder. *Parish* v. *Baird* (160 N. Y. 302) is cited as an authority for this proposition. *Second.* It is stated that the Rapid Transit Act, itself, in defining " property " as including privileges, franchises and easements belonging to abutting owners, has directly and specifically authorized payment of compensation for the taking of these vault privileges. *Oswego & Syracuse R. R. Co.* v. *State of N. Y.* (226 N. Y. 351) is cited as an authority for this latter proposition. The *Oswego* case held that by reason of the Barge Canal Act, the rebuilding of a bridge, rendered necessary by the plans for the Oswego canal, gave to the railroad company the right to reconstruct

the bridge and charge the state with the expense. We held that the words of the act " new bridges shall be built over the canals to take the place of existing bridges wherever required, or rendered necessary by the new location of the canals," were a direction that the cost of such changes should be met by the state and not by the railroad maintaining the bridge. We do not find in the Rapid Transit Act in question any direction whatever that privileges such as these vault licenses were to be compensated for when destroyed or extinguished by the building of the subway.

The Offermans had no right as abutting property owners to construct vaults under the highway of Fulton street without the permission or authority of the city of Brooklyn, later merged into the city of New York. The permits granted for this purpose were revokable when the street was required for a public improvement, and did not constitute, in our judgment, a right, privilege, franchise or easement as these words are used in the Rapid Transit Act for which compensation was to be made when such were taken or destroyed. As the city of New York had the right to revoke these licenses or permits when the space was required for any public improvement, it is reasonable to expect that the legislature would be quite specific and clear in its direction to pay for the extinguishment of such privileges, if such were its intention, and not leave it to conjecture or implication. If the legislature intended that such revokable rights or privileges should be paid for in constructing a subway, it should have so stated. The city could revoke these permits and remove the vaults whenever a public improvement was undertaken which necessitated such an act. Having this right, why should the taxpayers be called upon to pay for its exercise? If the legislature had power to impose the damages incident to removing these vaults upon the city, which had specifically reserved the right to remove them without cost, the legislature

should have made the direction very plain. We do not consider that the word " privilege," used in the Rapid Transit Act, has reference to such revokable permits.

We are further led to this conclusion when we consider the other claim put forth by respondents in the light of our decision in *Lincoln Safe Deposit Co.* v. *City of New York* (210 N. Y. 34). It is said in behalf of the respondents that the building of subways is not the use of a street for highway purposes (*Matter of Rapid Tr. R. R. Comrs.* [*Joralemon Street*], 197 N. Y. 81); that in constructing a subway, the city, therefore, acts toward abutting owners not in its sovereign capacity but in a proprietary capacity as a railroad builder. When, therefore, these permitted vaults are taken by the city or the rapid transit commission for a public purpose as distinguished from a highway purpose, the act is the same as though the vaults were destroyed by a stranger, and recovery can be had under the *Parish* case, above cited. The answer to this contention has been given in the *Lincoln Safe Deposit Company* case. We there reviewed these vault rights or privileges and held that they did not constitute property or easements in abutting owners not owning a fee in the street for which compensation could be made when destroyed or extinguished in constructing the subway. Referring to vault permits, Chief Judge CULLEN said: " It is elementary law that public grants must be strictly construed against the grantee. * * * If we assume the instrument to be as broad in its effect as the municipality was authorized to make it, it is not to be construed as a conveyance of a title to a part of the street. The very name, ' permit,' repels the idea that it was intended as a grant or conveyance. * * * Permits for vaults, like those to maintain areaways, stoops, courtyards, save such structures from being unlawful obstructions of the highway and nuisances, but are subject to abrogation for public convenience or necessity. * * * I do not assert that the privilege given to an abutter to construct

a vault in the street can be capriciously withdrawn. It is good, till the public convenience or necessity dictates its abrogation. * * * Nor do I see any reason why the right of the public authorities to recall the privilege granted the plaintiff and similar privileges should be limited to cases where such recall is necessary for street purposes." (p. 38.) These excerpts from the opinion in the *Lincoln Safe Deposit Co.* case indicate that we have already determined that the permits issued for the construction of vaults under a highway may be revoked without liability when public necessity so requires, and that public necessity is not limited or confined to those uses which have heretofore been known as highway purposes. The building of a subway is a public improvement — now a necessity, and when vaults are taken in its construction, the permits to maintain them are properly revoked and extinguished. No claim can be made by an abutting property owner, not having a fee in the street, for the revocation of his permit or the destruction of his vault under these circumstances. (*Patten* v. *N. Y. Elevated R. R. Co.*, 3 Abb. N. C. 306, 324, 325.) The very nature of the privilege is such that the abutting owner constructs his vault with knowledge that the city authorities cannot give him an easement or a franchise in the street which he may maintain against the rights and interests of the public. At most it is a mere license to use a portion of the highway, or land under a highway, temporarily or until the space is required for the public. The city authorities would have no right to grant more than this, even should they attempt to do so. (*Brooklyn Heights R. R. Co.* v. *Steers*, 213 N. Y. 76; *Ackerman* v. *True*, 175 N. Y. 353, 363–365; *Deshong* v. *City of New York*, 176 N. Y. 475.)

Much has been said in the briefs of counsel regarding the fee of Fulton street. Part of it is in the city of New York, part of it is said to be in unknown owners. We do not consider the discussion at all important. The

ownership of a fee in a street does not give the abutting owner the right to construct and maintain vaults in the highway. A permit or license from the municipal authorities is even then necessary. Such construction may materially interfere or endanger the use of the highway for street purposes. No vault, therefore, can be constructed, whether the abutting owner has the fee or not, without the consent of the municipal authorities. This authorization once given for reasons above stated can be withdrawn when public necessity requires the use of the street for other purposes. Whether in condemning the fee in the street such a privilege or license may be taken into consideration in determining value, we need not now determine. (See *Matter of City of New York* [*Pier Old No. 49*], 227 N. Y. 119.) We are not confronted with this question because of the findings of the commission. The commission determined that a triangular piece of Fulton street in front of the Offerman building was owned by unknown owners subject of course to the easement for street purposes. This fee was taken in this proceeding and the commission awarded one dollar to the unknown owners. We cannot go behind this finding which has been unanimously affirmed. The Offermans, therefore, at the time of the commencement of this proceeding, as well as at the time of the vesting of title to all of Fulton street in the city of New York, were not abutting owners, having a fee interest in Fulton street.

For the reasons here expressed, we determine that the respondents are not entitled to any damage for the destruction of their vault rights and that the orders below must be reversed and the award vacated, so far as it pertains to these vault interests, with costs to appellant in all courts.

HISCOCK, Ch. J., HOGAN, CARDOZO, POUND, McLAUGHLIN and ANDREWS, JJ., concur.

Orders reversed, etc.