# (July 11, 1983)

■ Caesar Bavaro et al., Respondents-Appellants, v Michael Parente et al., Appellants-Respondents. — In a consolidated CPLR article 78 proceeding and action pursuant to the Real Property Actions and Proceedings Law, defendants appeal, as limited by their brief, from so much of an order and judgment of the Supreme Court, Nassau County (Harwood, J.), dated April 19, 1982 and July 12, 1982, respectively, as found them in contempt of court and awarded damages, from so much of an order of the same court (Harwood, J.), dated August 10, 1982, as, upon reargument adhered to its original determination, from so much of an order and judgment of the same court (Morrison, J.), dated June 8, 1982 and July 12, 1982, respectively, as granted plaintiffs a permanent injunction and awarded damages, and from so much of an order of the same court, dated August 31, 1982 (Morrison, J.), as, upon reargument, adhered to its prior determination. Plaintiffs cross-appeal from so much of the latter order and judgment of the same court as denied them certain injunctive relief, and from an order of the same court (McGinity, J.), dated July 20, 1981, which also denied them certain injunctive relief. Orders dated April 19, 1982, June 8, 1982, August 10, 1982 and August 31, 1982 and both judgments dated July 12, 1982 reversed, insofar as appealed from, on the law and the facts, without costs or disbursements, and the consolidated CPLR article 78 proceeding and action pursuant to the Real Property Actions and Proceedings Law are dismissed. Appeal by plaintiffs from so much of the order dated July 20, 1981 as denied them certain injunctive relief dismissed as academic, without costs or disbursements, in light of our determination of the other appeals herein. Since 1971 plaintiffs Caesar Bavaro and Mary Bavaro have been the owners and plaintiff Joseph Bavaro has been the manager of the Tivoli Restaurant

which is located in the Village of Island Park, New York. The defendants are the Mayor and board of trustees of the village. The Tivoli Restaurant has been operating in its present location as a restaurant and bar for many years. It is situated on a triangular shaped lot which fronts on Waterford Road. The rear portion abuts a 10-foot strip known as Beach Walk, which strip is improved with a four-foot-wide sidewalk. Beach Walk is part of the Island Park Village Beach and is bordered to the north by the restaurant's southerly property line. For some years Beach Walk had been treated by plaintiffs, not as a public way, but as plaintiffs' own property. Beach Walk was used as a patio for dining for plaintiffs' customers with tables situated thereon. For many years, the entire beach has been enclosed with a wire fence that is locked when the beach is not open. During the summer months, the gate is locked and the beach is closed from 9:00 P.M. to 9:00 A.M. Pursuant to a written agreement with the village, the plaintiffs' predecessor in title was given access to the beach "for the purpose of dispensing refreshments from the stand to the patrons on the beach, and not for the purpose of permitting any egress and/or ingress to the beach" (see agreement dated June 8, 1950). The agreement provided that in the event anyone entered the beach over the restaurant property the agreement could be terminated by the village without notice. The agreement further stated that the permission granted "on the part of the Village is purely at the will and sufferance of the Village, and shall be only for the Summer Season * * * [T]his permission in no way grants any permanent right or easement or interest of any nature whatsoever * * * and the Village in no manner, shape or form divests itself of any of its rights of whatsoever kind or nature" (see agreement, par 6). On June 19, 1981 the village moved the beach fence which had been 10 feet from the plaintiffs' property line to within three feet of the property line and closed off the gate constructed in the fence thereby closing off direct access between the public beach and the restaurant. On the same date, the village erected a gate at municipal parking lot No. 10, a public parking facility located in close proximity to the restaurant property. On June 30, 1981 the plaintiffs commenced the instant proceeding pursuant to CPLR article 78 and the instant action pursuant to the Real Property Actions and Proceedings Law. Among other things, plaintiffs sought to enjoin the defendants from moving the beach fence and locking the gate in it. Following a hearing the plaintiffs were granted a preliminary injunction by Justice McGinity which, *inter alia,* directed the defendants to remove the fence that on June 19, 1981 had been placed at the rear of plaintiffs' property and reinstall the fence where it previously was at the boundary lines of Beach Walk and the public beach, and to open on a daily basis the lock on the fence located on Beach Walk that separates the plaintiffs' property from the public beach. By order to show cause dated October 23, 1981 the plaintiffs moved for (1) permission to amend their petition, (2) consolidation, (3) a special preference, and (4) an order punishing the defendants for contempt of court in failing to comply with the preliminary injunction signed by Justice McGinity. The defendants consented to all of the requested relief except for the adjudication that they be held in contempt of court. On November 23, 1981 an order was signed (Wager, J.), consolidating the matters for trial, granting plaintiffs a special preference, and ordering that a contempt hearing be held immediately prior to the consolidated trial. A hearing was held on the contempt issue and by order dated April 19, 1982 the defendants were adjudged in contempt of court for failing to timely comply with the preliminary injunction and were fined the sum of $6,636, representing the loss of business sustained by plaintiffs because of the village's delay in complying with the preliminary injunction. Defendants' motion for leave to reargue the contempt motion was granted but the court adhered to its original determination. After the trial of the consolidated matter, Trial Term continued

the provisions of the preliminary injunction "concerning the removal and reinstallation of the fence along Beach Walk and daily opening of the locked gate" and directed the defendants "to permit access to Parking Field #10 as except provided in Ordinance #70 prior to enactment of Local Law #6 of 1981 amending said Ordinance". That is, the lot was to be closed at midnight instead of at 9:00 P.M. as provided in Local Law No. 6 of 1981. Finally, the plaintiffs were awarded the principal sum of $11,276 in damages. The defendants' motion to reargue was granted but the court adhered to its original determination. Plaintiffs' cross motion for clarification was denied and all parties appealed to this court. In our opinion, Special Term erred when it granted the preliminary injunction and Trial Term also erred when it continued the provisions of the preliminary injunction as to the beach fence. While it is true that the village moved the fence nearer the plaintiffs' property line, it is undisputed that the relocated fence remained on the village's property and never encroached on the plaintiffs' property. Moreover, the 1950 agreement between the plaintiffs' predecessor in title and the village offers the plaintiffs no solace. Clearly, the permission granted by the agreement is terminable at the will of the village. No right, easement, or interest was granted thereby in favor of the restaurant property. Conversely, the village was under no binding obligation with respect to its beach property. Thus, the plaintiffs' claims of bad faith and discriminatory action on the part of the village are without merit. Indeed, until the fence was moved, the plaintiffs were enjoying special privileges not granted to other taxpayers, i.e., exclusive use of a portion of village property for their restaurant business. In short, the village had every right to relocate the fence along its beach property and if, as an incident of that relocation, the restaurant's profits declined, the village is not answerable therefor. Likewise, the village had every right to construct and lock the gate in its relocated fence since the plaintiffs had no greater right of access to the subject beach than any other member of the public or any other taxpayer (see *Durr v Incorporated Vil. of Is. Park,* 277 App Div 774). Inasmuch as the defendants acted properly in relocating the fence and installing the gate Special Term and Trial Term erred in granting preliminary and permanent injunctive relief to the plaintiffs. As noted above, the preliminary injunction directed the defendants to remove and reinstall the fence and gate to its previous location and to open the gate on a daily basis. The defendants were found to be in contempt of court and fined for their "dilatory conduct" in not complying with those directions within five days from the date of Special Term's order. In view of our holding that the preliminary injunction was improvidently granted, the finding of contempt must be reversed. Trial Term not only permanently enjoined the defendants from moving the fence but also directed the defendants to permit access to village parking lot No. 10 until midnight. Parking lot No. 10 consists of 41 parking spaces, constitutes part of the village beach and is located next to the plaintiffs' property. In addition to the subject lot, the village maintains a second beach parking lot (No. 9) approximately 350 feet from the plaintiffs' restaurant. Subdivision (c) of section 4 of Island Park Village Ordinance No. 70 regulates parking at these lots. From June 16, 1980 through July 30, 1981 parking at the lots was prohibited between the hours of 12 midnight and 8:00 A.M. By Local Law No. 6 of 1981, the village board amended the statute to prohibit beach parking between the hours of 9:00 P.M. and 9:00 A.M. Based on the record before it, Trial Term concluded that the board of trustees "have abused the police power by discriminatory enactments in an effort to terminate petitioner's legal use of the premises" and that the "ordinances and action challenged here were adopted for purposes other than effective regulation and they cannot stand". We disagree with those conclusions. The record reveals neither impermissible

purpose nor discriminatory enforcement. Local Law No. 6 of 1981 prohibits the parking of vehicles between the hours of 9:00 P.M. and 9:00 A.M. at all beach parking lots in the Village of Island Park. The parking regulation applies to all drivers, be they residents or nonresidents of the village and whether or not they are patrons of the plaintiffs' restaurant. Moreover, plaintiff Joseph Bavaro testified that he had met with the village board prior to 1981 in order to discuss the problem of teenagers congregating in municipal parking lot No. 10 and that after the village hired a security guard to patrol the parking lot the nuisance abated. The village clerk testified that complaints concerning the parking lot (which had averaged 50 to 100 per year prior to the enactment of Local Law No. 6 of 1981) ceased when the gate was closed at lot No. 10 after 9:00 P.M. In sum, we hold that the enactment of Local Law No. 6 of 1981 was a proper exercise of the village board's governmental power and that Trial Term erred when it impliedly held that parking amendment to be invalid (see, generally, 39 NY Jur, Municipal Corporations, § 190). Mangano, J. P., Gibbons, Bracken and Niehoff, JJ., concur.