*37 OPINION OF THE COURT
Louis C. Benza, J.
Beginning in 1968, the Town of Esopus (the Town) leased approximately 34.8 acres of land and began using the property as its municipal landfill. In 1978 the landfill was licensed by the Department of Environmental Conservation (DEC), and the license was renewed for a five-year period in 1981. The 1981 DEC permit required, among other things, that operation of the landfill comply with the applicable rules and regulations (6 NYCRR).
In 1985, about a year and a half prior to expiration of the DEC license, the Town appropriated the property and continued to use it as a landfill (see, Gordon v Town of Esopus, 162 AD2d 829). In an eminent domain proceeding brought by the original landowners, the Town was ordered to pay in compensation an amount based on the Supreme Court’s findings that the property’s highest and best use was as a landfill and that it was likely to be used for this purpose for another 25 years (Gordon v Town of Esopus, Sup Ct, Ulster County, Aug. 26, 1988, Connor, J.). The latter finding reflected, in part, testimony by a DEC official that the landfill had a life expectancy of l1/2 years or, if a double liner was put into place, of 20 years. An official of the Ulster County Health Department also testified that the life expectancy of the landfill was 25 years.
In early 1987, shortly after expiration of the license, DEC charged the Town with violating regulations governing the operation of landfills (6 NYCRR part 360). In March of that year, the parties signed a consent order, in which the Town agreed (1) to undertake an investigative study of the landfill’s compliance with applicable regulations, including parts 360 and 703, and (2) to close the landfill within four months if the study indicated that compliance was impossible.
The subsurface investigation report (SIR) was completed in October 1991 and submitted to DEC for its review. The investigation revealed that the groundwater around the landfill contained larger amounts of certain substances (lead, iron manganese, arsenic, and chromium) than are permitted by the relevant standards (6 NYCRR part 703), but also found no potential threat to health or the environment. Because of the presence of these chemicals and other factors, the DEC regional director informed the Town’s Supervisor that the landfill was not in compliance with applicable standards, that it could not be brought into compliance, and that it must be closed by June 1993.
*38 The Town did not challenge the closure order and has, in fact, closed the landfill. It has instituted this lawsuit, however, alleging that the State’s action constituted a "taking” of the property because it destroyed "all economically viable uses of the property, which it had acquired for the specific purpose of continued use as a municipal landfill”.* The items of damage listed in the claim are the value of the 34.8+ acres of land ($353,000), the revenues that could have been anticipated over the estimated life of the landfill ($2,700,000), and the costs of carrying out the closure ($2,100,000).
Infringement on the use of property because of governmental regulations enacted for the health and safety of the general populace does not constitute a taking for which the landowner is entitled to just compensation, even if the usefulness of the land is significantly compromised or destroyed, unless the property owner previously had a vested right to use the land in the now-prohibited manner. In Moran v Village of Philmont (147 AD2d 230, appeal dismissed 74 NY2d 943), the Third Department upheld the right of a municipality to enjoin an individual from dumping debris on his property in order to fill in a ravine. When the filling operation began, the landowner’s activity was lawful and permitted, but the Village subsequently enacted a local law forbidding such dumping. The Court held that regulation of private dumping was a valid exercise of governmental power to advance public health and safety, and stated, "[t]he fact that an ordinance effectively reduces the value of a parcel does not render it confiscatory” (supra, at 233). In part, this rested on the court’s finding that the property owner did not have "a substantial vested interest in the dumping operation” (supra, at 234).
Even where a landowner had the unquestioned right to use property in a certain manner, which use was subsequently prohibited by regulation, there can be no recovery from the regulating authority unless all possible uses are prohibited. In Matter of Smith v Williams (166 AD2d 536), the owner of property located in a wetlands area sought permission from DEC to construct a single-family dwelling on his land. When his request was denied, he sued the Commissioner of DEC, asserting that the denial constituted an unconstitutional taking. It was held that the landowner failed to meet his burden of proof. "It is well settled that a property owner who challenges land *39 regulation as a taking or confiscation has a heavy burden of proof. He must demonstrate, by 'dollars and cents evidence’ * * * that under no permissible use would the parcel as a whole be capable of producing a reasonable return.” (Supra, at 537 [citation omitted].)
In the instant case, the Town never had a "vested” right to continue using its property as a landfill. It is evident that the Town hoped, and anticipated, continued renewal of the licenses permitting such use, and the courts deciding the eminent domain proceeding also assumed that that would be the case. But the licenses were issued for a finite number of years and were effective only as long as certain express conditions were met, including among them compliance with the relevant regulatory guidelines. The Town had no absolute, secured right to have its license renewed, and thus its right to use the property as a municipal landfill was contingent on receiving the appropriate licenses. Any question concerning the propriety of DEC’s act in requiring the landfill to be closed is properly resolved by way of a CPLR article 78 proceeding and is not before this court.
In addition, DEC’s actions did not render the property totally valueless. In recent years, the Town has constructed and is currently operating a solid waste transfer station (or municipal drop-off center) on the site of the former landfill. Whether or not significant revenues can be anticipated from operation of this facility, it certainly has value insofar as it assists the Town in meeting its responsibility to arrange for the disposal of solid waste.
In this type of situation, the State has a duty to pay for the value of land only if its actions destroyed a claimant’s previously vested, unconditional right to use the land in a certain way and, even then, only if there is no other viable use to which the land can be put. The acknowledged facts of this case are such that, as a matter of law, claimant will not be able to prove that there was an unconstitutional taking of its property. Furthermore, claimant has presented no authority for the proposition that the State has any duty to compensate a landowner for loss of anticipated future profits (except insofar as that is a factor in arriving at a value for the land itself). Nor has claimant presented any authority for imposing on the State a duty to pay a property owner’s costs involved in complying with properly promulgated regulations.
Defendant’s motion is granted, and the claim is dismissed.

 The claim also purports to state a cause of action based on 42 USC § 1983, but the State is not a "person” amenable to suit under that statute (Will v Michigan Dept. of State Police, 491 US 58).