■ In the Matter of JAMES C. BREITENSTEIN, Respondent, v STATE OF NEW YORK, Appellant. (Claim No. 83268.) [666 NYS2d 769] —Mikoll, J. P. Appeal from a judgment of the Court of Claims (Benza, J.), entered December 13, 1996, upon a decision of the court in favor of claimant.

At issue in this condemnation case is the amount of compensation awarded to claimant following the State's acquisition of a portion of his real property. At the time of the appropriation, claimant owned 52.38 acres of undeveloped land in the Town of Duanesburg, Schenectady County. His parcel was roughly bisected by State Route 7, with 24.663 acres to its north and 27.719 acres to its south. In August 1988, for purposes of constructing a railroad overpass bridge, the State appropriated in fee 2.16 acres: 1.703 acres along the south side of Route 7 and 0.461 acres located along the north side. In addition, the

State acquired a temporary easement over 2.191 acres on the northern parcel for use as a detour during construction. The appropriation resulted in no loss of frontage along Route 7, but a significant change in elevation resulted. Whereas access was essentially at grade level prior to the appropriation, an average elevation of approximately 9.4 feet existed in its aftermath, except at the extreme east and west ends of the property.

Testimony established that claimant purchased the land in 1977 for approximately $523 per acre, and that in the 11 years between his purchase of the land and the State's appropriation, claimant took no action to improve the property or implement any plans for its development or subdivision. The property had no water or sewer service; the only available utility services were telephone and electricity. Testimony indicated that the soil was heavy clay with very poor drainage.* No testing was performed to determine the feasibility of construction, the ability of the land to accept waste or the availability of a potable source of water. No studies were conducted to determine the need or feasibility for any commercial use of the property.

The State alleges two principal errors affecting the Court of Claims' calculation of the award due claimant. First, it claims that the court erred in assigning a per-acre value of $10,500 by utilizing values essentially extrapolated from sales of much smaller parcels of land, and second, that in computing consequential damages utilizing a "cost-to-cure" method, the court double-counted acreage.

While the parties' appraisers agreed that the highest and best use of the property, both before and after taking, would be as a commercial subdivision, they disagreed as to the proper valuation method. Claimant's valuation was premised upon an assumption of the land having already been subdivided, and it utilized comparison sales of parcels ranging in size from 0.52 to 4.60 acres. The State argued that the proper method was to value the land as raw acreage with an increment for its potential use, and offered evidence of comparison sales of parcels ranging in size from 4.45 to 31.13 acres. The Court of Claims accepted two of claimant's comparable sales and one of the State's, and made its own various adjustments thereto for location, topography, zoning and general economic trends. The

---

* Testimony at trial indicated that due to poor soil conditions in the area, a newly constructed ice cream store had been denied a septic tank permit by the Department of Environmental Conservation for customers to use its restroom facilities, use of which was restricted to the store's employees.

court arrived at a pretaking per-acre value of $10,500, which fell between the State's valuation of $3,000 and claimant's valuation of $15,000. The Court of Claims also awarded consequential damages attributable to the substantial elevation from grade level resulting from the appropriation, using a "cost-to-cure" formula, by determining the cost of constructing an access road. The court broke down the consequential damages into two components: 3.55 acres needed for construction of the road itself, and the cost of the road's construction ($158,347), which it divided by the remaining affected acreage (46.67 acres) to arrive at a per-acre diminution in value of $3,393.

It is well settled that the standard for determining compensation for property taken in condemnation is "market value at the time of appropriation, that is, the price a willing buyer would have paid a willing seller for the property" (*Matter of Town of Islip [Mascioli]*, 49 NY2d 354, 360). The valuation is to be based upon the highest and best use of the property, regardless of whether the condemnee is so using the property at the time (*Matter of County of Suffolk [Firester]*, 37 NY2d 649, 652). However, in a case where the property is not being put to its highest and best use at the time of taking, the proper rule to be employed in ascertaining value is to treat the property neither as raw acreage nor as having attained its highest and best use, but rather to add to the value of the acreage an increment for its potential use (*id.*). Thus, "the determiner of the facts should set out the found acreage value and the found increment value, rather than the final per acre figure, so that intelligent review is permitted" (*id.*, at 653). The increment would presumably reflect, or at least be reviewable as to, the application of "proper discounts * * * for the cost that would be incurred if the land were developed for a particular use as its highest and best use" (*Matter of County of Clinton [Gagnon]*, 204 AD2d 898, 899; *see, Matter of Iroquois Gas Transmission Sys. [Kudlack]*, 226 AD2d 808, 809 ["if the potential for development was a factor in valuing this property, we are unable to discern whether, or to what extent, the cost of such development, if any, was considered"]). Of course, where values are ascertained with reference to truly comparable sites, i.e., those with similar highest and best uses but not yet so developed, there is no need for the use of an increment (*see, e.g., Marks v State of New York*, 152 AD2d 930; *United Artists Theatre Circuit v State of New York*, 53 AD2d 784).

We agree with the State's first contention on appeal insofar as it is urged that the proper method of ascertaining the value

of claimant's land, and hence his compensation, was to determine a per-acre value and add thereto an increment for its commercial development potential. Our difficulties with the Court of Claims' decision are several and interrelated. First, notwithstanding the court's thorough decision and clear mathematical calculations, we are unable to discern the manner in which the per-acre value was ultimately determined, specifically as to use of the required formula of assigning a value to the raw acreage and adding thereto an increment for its potential development. Next, of the comparable sales offered by both parties' appraisers, the court adopted only those whose size was close to the "proposed subdivided lots (which range in size from two to six acres)". We are unable to determine from the record the extent to which, if at all, the value of the comparison sales was enhanced by the availability of water or sewer service, or the existence of structures not present on the subject land. Finally, while the method of valuation employed by the Court of Claims affords claimant the benefit of presuming his land to have already been subdivided, we find no corresponding assessment of any costs associated therewith. To perform our function of "intelligent review" we require more explicit findings as to the comparison sales and the applicability of any discounts thereto.

We reject the State's contention that the Court of Claims' award of consequential damages resulted in the double-counting of 3.55 acres, since the per-acre diminution in value was determined by dividing the cost-to-cure by the acres remaining after deducting those taken in fee and needed for construction of the access road. Moreover, the fact that a portion of the acreage remained unaffected by the change in elevation would not result in any change in the calculation of consequential damages, which properly rested on a "cost-to-cure" basis.

Crew III, White, Peters and Carpinello, JJ., concur. Ordered that the judgment is reversed, on the law, without costs, and matter remitted to the Court of Claims for further proceedings not inconsistent with this Court's decision.